COMMITTEE ON PROFESSIONAL ETHICS AND CONDUCT OF the IOWA STATE BAR ASSOCIATION, Appellee,

v.

**Adelbert L. MARTIN, Appellant.**

**No. 85–480.**

Supreme Court of Iowa.

Oct. 16, 1985.

Jerry L. Jones, Ames, for appellant.

George H. Capps, Patrick W. O'Bryan and Hedo Zacherle, Des Moines, for appellee.

CARTER, Justice.

This matter is before us on the appeal of attorney Adelbert L. Martin (appellant) from the findings and recommendations of the Grievance Commission (Commission) that his license to practice law should be suspended. Such appeal is permitted by Iowa Supreme Court Rule 118.11. Our review on appeals under that rule is de novo. The findings and recommendations of the Commission are not binding, but we accord them respectful consideration. *Committee on Professional Ethics and Conduct v. Rabe*, 284 N.W.2d 234, 235 (Iowa 1979).

The Commission heard evidence presented on a complaint filed against appellant by the Committee on Professional Ethics and Conduct of the Iowa State Bar Association. The complaint alleged that appellant "neglected and failed to carry out his duty as an attorney" in four separate estate proceedings in which he was employed as attorney for the personal representative. The evidence reflects the following concerning these allegations.

1. *Pamelia Phelan Estate.* This estate was opened on November 7, 1983, with appellant serving as attorney for the personal representative. A delinquency notice was mailed to him by the clerk of court on May 1, 1984, for failure to file the probate inventory within the time required by law. At the time of the hearing of this matter before the Commission on January 7, 1985, the inventory had still not been filed. Appellant testified before the Commission that the gross assets of the estate were less than $20,000.

2. *A.L. Martin Estate.* A.L. Martin was appellant's father. His estate was opened on September 10, 1974, with appellant serving as both the personal representative and attorney for the personal representative. In the face of repeated notices of delinquency received from the clerk of court, appellant did not cause the probate inventory to be filed until six years after the time within which it was required by law to be filed. The gross assets of the estate were valued at $61,000. This estate was not closed at the time of the hearing before the Commission on January 7, 1985.

3. *Winferd Shultz Estate.* This estate was opened on March 4, 1975, with appellant serving as attorney for the personal representative. In the face of repeated delinquency notices received from the clerk of court, appellant did not cause the pro-

bate inventory to be filed until five years and nine months after it was required by law to be filed. This estate was not closed at the time of the hearing before the Commission on January 7, 1985, although that failure also had been the subject of repeated delinquency notices to appellant.

4. *Blanche Shultz Estate.* This estate was opened on January 16, 1981, with appellant serving as attorney for the personal representative. The approximate value of the estate was $674,000. A federal estate tax return was due to be filed on October 6, 1981, nine months from the date of decedent's death, and any tax owed on the return was due on the same date.

No application for extension of time to file the return or pay the tax was filed prior to the time that such actions were required, and the return was not filed until March 9, 1983. The total federal estate tax due from the estate was $106,597.99. As a result of the untimely filing of the return, a penalty of $26,649.50 was assessed by the Internal Revenue Service. In addition, a penalty of $2131.96 was assessed for failure to pay the tax on time. In addition to these penalties, interest of $12,861.85 was assessed on the amount of unpaid tax.

The primary reason given by appellant for the delay in filing the federal estate tax return for this estate was the difficulty in computing the charitable deduction for a bequest to the Christian Church of Zearing of approximately $119,000. Computation of the charitable deduction for federal estate tax purposes requires what is known as an "interrelated" computation. This is because the charitable deduction has to be determined in order to compute the federal estate tax, and the federal estate tax has to be determined in order to compute the charitable deduction. Appellant was not able to make the necessary mathematical computations required to determine the proper deduction. It appears, however, that a representative of the Internal Revenue Service assisted appellant in working out the interrelated charitable deduction calculation promptly upon being asked to do so. Appellant did not seek such assist-

ance, however, until sometime after June of 1982. Nor was the estate tax return promptly filed upon his receiving such assistance from the Internal Revenue Service.

In addition to the foregoing matters, appellant received delinquency notices from the clerk of court in this estate for not filing the inventory and certain reports on time. At the time of the hearing before the Commission on January 7, 1985, this estate was still not closed.

I. *The Findings and Recommendations of the Grievance Commission.*

The Commission found the evidence to be substantially as we have stated it to be. It determined that the pattern of professional conduct exhibited by appellant did not satisfy the required high standards expected of an attorney and reflected adversely on his fitness to practice law. The Commission further found that appellant's actions specifically violated DR 6–101 (neglect of legal matters entrusted to him and handling matters for which he should have known he was incompetent to handle) and DR 7–101 (failure to zealously represent his clients' interests). The Commission recommended that his license be suspended for nine months.

Although he does not dispute the material findings of fact upon which the Commission's conclusions and recommendations are based, appellant asserts that the recommended discipline is excessive.

II. *Neglect of Professional Responsibility.*

As we noted in *Committee on Professional Ethics and Conduct v. Rogers,* 313 N.W.2d 535, 536 (Iowa 1981), a lawyer's obligation to his client "requires him to prepare adequately for and give appropriate attention to his legal work." We distinguished professional neglect from mere inadvertence or errors involving professional judgment by quoting with approval from ABA Comm. on Professional Ethics Informal Opinions, No. 1273 (1973). That opinion states that a violation of DR 6–101 generally involves:

Indifference and a consistent failure to carry out the obligations which the lawyer has assumed to his client or a conscious disregard for the responsibility owed to the client.... Neglect cannot be found if the acts or omissions complained of were inadvertent or the result of an error of judgment made in good faith.

We find that the record of appellant's actions which we have detailed above fully supports the Commission's finding that appellant has violated DR 6–101 and DR 7–101.

### III. *Discipline to be Imposed.*

■ It is clear from our decisions that a finding of dishonesty is not essential in order to warrant the imposition of appropriate discipline for a breach of professional responsibility. With regard to the proper discipline to be imposed for professional neglect, we have stated that each case must be considered on its own facts. *Rogers,* 313 N.W.2d at 537; *Committee on Professional Ethics and Conduct v. Bitter,* 279 N.W.2d 521, 524 (Iowa 1979).

Appellant urges that the discipline which the Commission recommended in his case is excessive when compared to that which was imposed in the *Rogers* and *Bitter* proceedings. We disagree. Appellant's breaches of professional responsibility in the handling of the Blanche Shultz estate alone were more serious in terms of the harm inflicted than the cumulative breaches of responsibility involved in *Rogers* or *Bitter.* Appellant engaged in a course of conduct which assuredly and predictably caused a substantial and totally unnecessary monetary loss to persons whose interests he was charged with protecting. There was no reason for this to have occurred except for appellant's glaring breach of professional responsibility. Moreover, his response, when called upon to account for his actions, has been disappointing. He appears not to recognize the magnitude of his neglect of professional duty and has sought to offer inadequate and inappropriate excuses therefor.

It appears from the record that there was no justification for the untimely filing of the federal estate tax return in the Blanche Shultz estate. The same is true with respect to appellant's chronic avoidance of other filing deadlines imposed by law in the administration of the four decedents' estates involved in the complaint.[1] The appellant claims that, because of a lack of liquid assets in the Blanche Shultz estate, some of the interest assessed on the unpaid tax obligation would have accrued in any event because it would have been impossible to make timely payment of the full estate tax liability. Unfortunately, appellant has placed himself in a poor position to substantiate this claim as a result of having made no effort to see that as much of the tax owed as possible was paid on time.

Appellant's claims with regard to the unavailability of liquid assets with which to make payment of the federal estate tax is not readily corroborated by a balance sheet examination of the items shown in the estate inventory. To the extent that these claims have any merit, it is clear that appellant failed to inform the executor of the estate or the beneficiaries of the problems, if any, in liquidating assets to pay taxes in order that they might have been involved in the necessary decisions to be made in solving this problem. Whether all of the interest could have been avoided we cannot say, but certainly much of it could and should have been avoided.

■ In addition to the other matters which we believe support the recommendation of the Commission concerning discipline, we also consider the lack of any showing that appellant has attempted to indemnify the estate or its beneficiaries in

---

1. Appellant was not authorized to act as attorney in these matters after September 4, 1984, as a result of the suspension of his license for failure to file proof of compliance with the continuing legal education requirements. He neglected, however, to make satisfactory arrangements for withdrawing from these probate proceedings and was accordingly found to be in contempt of our suspension order.

whole or in part for the losses sustained from his breaches of professional responsibility.[2] Willingness to reimburse a client or other damaged parties is a proper consideration in these cases. *See* 7 Am.Jur.2d *Attorneys at Law* § 59, at 119 (1980); Annot., 96 A.L.R.2d 823, 858 (1964). This is a matter which we believe may again receive consideration in the event of an application by appellant for the reinstatement of his license.

IV. *Period For Which Suspension Shall Run.*

 Finally, we consider appellant's argument that, because he has already been under suspension since September 4, 1984, for failure to file proof that he has completed the required number of hours of continuing legal education, any further suspension imposed for the violations contained in the present complaint should be proportionately reduced. In certain cases where the final determination of discipline by this court has been preceded by a period of temporary suspension based on the same violation, we have measured the period of the suspension from the date that the temporary suspension was imposed. *See Committee on Professional Ethics and Conduct v. Jones,* 368 N.W.2d 157, 158 (Iowa 1985); *Committee on Professional Ethics and Conduct v. Christoffers,* 348 N.W.2d 227, 230 (Iowa 1984); *Committee on Professional Ethics and Conduct v. Halleck,* 325 N.W.2d 117, 118 (Iowa 1982). We do not approve that disposition, however, where, as in the present case, the prior period of suspension arose out of a distinctly separate violation.

We order that the license to practice law of appellant, Adelbert L. Martin, is hereby suspended for an indefinite period of time, with no possibility of reinstatement for one year from the date of the filing of this opinion. The suspension shall apply to all facets of the practice of law provided, however, that it is not intended to interfere with appellant's operation of the abstracting business currently owned and operated by him. Upon application for reinstatement, appellant shall establish that he has refrained from all facets of the practice of law as designated in Iowa Supreme Court Rule 118.12 and has otherwise complied with those restrictions which our rules place upon suspended attorneys.

LICENSE SUSPENDED.

---

**2.** A deduction of $13,694.76 was claimed on the federal estate tax return in the Blanche Shultz estate for attorneys fees for the personal representative. The extent to which any fees have in fact been paid to appellant in any of these four probate matters does not appear in the record.