IOWA SUPREME COURT BOARD
OF PROFESSIONAL ETHICS
& CONDUCT, Appellee,

v.

Don E. GOTTSCHALK, Appellant.

No. 96–686.

Supreme Court of Iowa.

Sept. 18, 1996.

Fred White, Waterloo, for appellant.

Don E. Gottschalk, Cedar Falls, pro se.

Norman G. Bastemeyer and Charles L. Harrington, Des Moines, for appellee.

Considered by McGIVERIN, C.J., and CARTER, LAVORATO, SNELL, and ANDREASEN, JJ.

LAVORATO, Justice.

The Iowa Board of Professional Ethics and Conduct (board) charged attorney Don E. Gottschalk with converting $1000 in client trust funds. The board also charged Gottschalk with falsely reporting he monthly reconciled his client trust account. Following a hearing, a division of the Grievance Commission (commission) found evidence substantiated the charges and recommended Gottschalk's license be suspended for not less than one year. On review we concur with the commission's findings and recommended sanctions.

■ Gottschalk has appealed the matters before us pursuant to Iowa Supreme Court Rule 118.11. Our review is therefore de novo. Iowa Sup.Ct.R. 118.11. We give respectful consideration to commission recommendations, but we ultimately decide what discipline is appropriate under the unique facts of each case. *Iowa Supreme Ct. Bd. of Professional Ethics & Conduct v. Scheetz,* 549 N.W.2d 828, 832 (Iowa 1996). In each case, we are guided by the following standards in determining whether discipline is warranted: "the nature of the alleged violation, the need for deterrence, protection of the public, maintenance of the reputation of

the bar as a whole and the respondent's fitness to continue in the practice of law." *Committee on Professional Ethics & Conduct v. Blomker,* 379 N.W.2d 19, 21 (Iowa 1985).

■ The board must prove its allegations of lawyer misconduct by a convincing preponderance of the evidence. *Committee on Professional Ethics & Conduct v. Conzett,* 476 N.W.2d 43, 44 (Iowa 1991). In our de novo review, we find the following facts from the record.

Gottschalk has practiced law in this state since 1967. He is a Cedar Falls sole practitioner sharing office space with several other lawyers. Together they maintained a joint office account for paying office expenses. Each week each attorney deposited money into this account to cover such things as support staff salaries, utilities, and phone bills. Gottschalk maintained a separate client trust account and did the bookkeeping for that account. He kept individual ledgers for each client's funds in this account.

On November 24, 1993, the balance of the joint office account was $7.52. The same day, Gottschalk deposited $1000 into this account after writing a check to himself for this amount from his client trust account. Gottschalk had neither a court order nor a client authorization to withdraw the $1000. Gottschalk did not record the $1000 withdrawal on any particular client's ledger in the trust account. The $1000 was immediately expended for support staff wages and other office expenses.

Gottschalk believed he could shortly reimburse the client trust account for the $1000 he took. He was originally banking on an imminent personal injury settlement for a client named Polk. The settlement was delayed because the other party's insurance company needed more information. Gottschalk received the settlement check in March 1994.

On April 8, 1994, Gottschalk reimbursed the trust account from fees he had coming from a settlement involving a client named Valdaar. The settlements in the Polk and Valdaar case came several days apart.

On May 3 client security auditor Marvin Bomgaars appeared at Gottschalk's office on another matter. While he was there, Bomgaars proceeded to audit Gottschalk's trust account. During that audit, Bomgaars discovered the unauthorized $1000 withdrawal that Gottschalk eventually conceded was due to his conversion of trust funds.

In February 1994 Gottschalk filed his annual statement and questionnaire with the Client Security and Attorney Disciplinary Commission. In that statement Gottschalk certified that he monthly reconciled his trust account checkbook balances with bank statement balances. He also certified he monthly reconciled his trust account checkbook balances with client ledger balances. Although the board alleged the certification was false, Gottschalk maintained he had reconciled the account, recognizing the $1000 shortage in doing so.

■ Like the commission, we find that Gottschalk converted clients' funds when he withdrew the $1000 from the client trust account to pay office expenses. Although Gottschalk maintains there were probate fees in the trust account totaling more than $1000 when he wrote the check, there were no court orders allowing the fees. He was therefore not entitled at the time to withdraw the fees. *See Iowa Supreme Ct. Bd. of Professional Ethics & Conduct v. Evans,* 537 N.W.2d 783, 784–85 (Iowa 1995) (lawyer not entitled to probate fee until court determines amount to be allowed).

■ We also agree with the commission that Gottschalk falsely certified that he (1) reconciled his trust account checkbook balances with the client ledger balances on a monthly basis and (2) reconciled his trust account checkbook balances with bank statement balances on a monthly basis. At the time he made that certification there was a $1000 shortage in the client trust account. As the board argues, the shortage made it impossible to make a reconciliation. The certification was false.

■ The conversion and false certification constituted a violation of the Iowa Code of Professional Responsibility for Lawyers DR 9–102(A) (lawyer or firm shall maintain all client funds in trust account and may not withdraw such funds for own use unless and until due), DR 1–102(A)(3) (lawyer shall not engage in illegal conduct involving moral turpitude), and DR 1–102(A)(4) (lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation). That brings us to the matter of discipline.

Gottschalk argues we should, in our de novo review, impose a less severe sanction than the commission recommended. He does not indicate what discipline he thinks appropriate.

Gottschalk argues a lesser sanction is warranted because of several alleged mitigating circumstances. These alleged mitigating circumstances include (1) Gottschalk's reputation in the community for honesty, (2) no client funds were lost because he eventually repaid the client trust account, (3) no client suffered any damages, (4) Gottschalk's prior unblemished twenty-seven year history of properly maintaining his client trust account, and (5) Gottschalk's full cooperation with the board's investigation.

Gottschalk attributes his out-of-character actions to poor judgment instead of moral turpitude. In his words, "[t]he entire situation presents mitigating facts and circumstances such as to justify the court in reducing the recommended sanction of suspension of license recommended by the Grievance Commission."

The board argues the commission considered the above factors Gottschalk urges in mitigation because the commission did not recommend revocation. The board thinks the one-year suspension is lenient under the facts presented and our prior decisions in similar cases.

In addition, the board points to aggravating factors. Those include two prior public reprimands for unrelated ethical violations. The board thinks these reprimands require a sanction more severe than the commission recommended. *See, e.g., Committee on Professional Ethics & Conduct v. Wenger,* 469 N.W.2d 678, 680 (Iowa 1991) (en banc) ("Both aggravating and mitigating circumstances are considered in determining the appropriate sanction. . . . Prior disciplinary proceed-

ings bear upon the attorney's character."). The two reprimands involved Gottschalk's neglect of client matters.

In the past, we have consistently revoked the license of the offending lawyer in misappropriation cases. *See, e.g., Committee on Professional Ethics & Conduct v. Fugate*, 394 N.W.2d 408, 410 (Iowa 1986) ("Our decisions consistently hold that revocation, rather than suspension, is the appropriate discipline for the commingling and conversion of client funds."). We have, however, meted out a less severe sanction than revocation in these instances. *See, e.g., Committee on Professional Ethics & Conduct v. Harris*, 524 N.W.2d 179, 180–81 (Iowa 1994) (misconduct including failure to advise client of legal affairs, withdrawal from trust to pay fees without express direction, replacing withdrawal by paying client from trust funds belonging to other clients, and failure to cooperate with disciplinary investigation warranted three-year suspension); *Committee on Professional Ethics & Conduct v. Rauch*, 486 N.W.2d 39, 40 (Iowa 1992) (misappropriation of testamentary trust funds, collection of conservatorship fee without court approval, maintenance of disorganized client trust accounts, undignified and discourteous conduct toward tribunal and mishandling of adoption proceeding warranted one-year suspension).

The commission recognized that we routinely revoke licenses of lawyers who convert funds entrusted to them. But the commission gave these reasons for not recommending revocation:

> This Division of the Grievance Commission has found serious violations of DR 9–102(A) and DR 1–102(A)(3) and (4), but because of the fact that no client funds were lost and no parties were harmed, and [Gottschalk] does appear to maintain his accounts in good order, and we are not apprised of any other behavior of that nature by [Gottschalk], and [Gottschalk] does seem to enjoy a good reputation in the community and his peers for honesty, it is believed that revocation or disbarment would not be justified here even though suggested by [past cases].

The commission's thoughtful explanation is convincing. We are inclined to let the recommendation stand and not revoke. We therefore accept the commission's recommendation and suspend Gottschalk's license to practice law indefinitely with no possibility of reinstatement for one year. This suspension shall apply to all facets of the practice of law. *See* Iowa Sup.Ct. R. 118.12. Upon application for reinstatement, Gottschalk shall have the burden to prove that he (1) has not practiced law during the period of suspension and (2) has met the requirements for client notification and disengagement from the practice set forth in Iowa Supreme Court Rules 118.13 and 118.18. The costs of this proceeding are assessed to Gottschalk. Iowa Sup.Ct. R. 118.22.

**LICENSE SUSPENDED.**