**IOWA SUPREME COURT BOARD OF PROFESSIONAL ETHICS AND CONDUCT, Complainant,**

v.

**Daniel J. JAY, Respondent.**

No. 99–1646.

Supreme Court of Iowa.

Feb. 16, 2000.

Norman G. Bastemeyer and David J. Grace, Des Moines, for complainant.

Daniel J. Jay, Centerville, pro se.

CARTER, Justice.

The Iowa Supreme Court Board of Professional Ethics and Conduct filed a complaint against the respondent, Daniel J. Jay, alleging that he had violated several provisions of the Iowa Code of Professional Responsibility for Lawyers. These allegations charged that he had neglected his responsibility in the administration of a decedent's estate in which he was both executor and attorney for the executor; had collected fiduciary and legal fees prematurely in violation of Iowa Rule of Probate Procedure 2(d) and the provisions of a court order; and had misrepresented the status of the estate proceeding to the court. The Grievance Commission found that the Board had proved the alleged violations and recommended that respondent be indefinitely suspended from the practice of law with no possibility of reinstatement for a period of one year. We are required to review the findings and

recommendations of the Grievance Commission pursuant to Court Rule 118.10.

We find, as did the Grievance Commission, that the Board proved the alleged ethical violations by a convincing preponderance of the evidence. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Freeman,* 603 N.W.2d 600, 601 (Iowa 1999) (standard of proof in a disciplinary proceeding is a convincing preponderance of the evidence); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Hughes,* 557 N.W.2d 890, 892 (Iowa 1996) (supreme court's review in attorney disciplinary cases is de novo). We also agree that the sanction, which the Grievance Commission has recommended, is the appropriate discipline for the violations found to exist.

■ The facts involved in the charges against respondent are almost entirely undisputed. In July 1993 respondent's uncle, Russell Jay, died in Appanoose County. His will appointed respondent as executor of his estate. Respondent presented the will for probate and was appointed executor to serve without bond. He designated himself as attorney for the estate. The will directed distribution of the estate assets among twelve nieces and nephews of the decedent and four stepchildren of the decedent. Because the stepchildren received half shares, respondent's share of the residuary was one-fourteenth.

Nearly three weeks after the ninety-day period for filing the estate inventory had expired, respondent obtained an order extending the time for filing the inventory until November 28, 1993. He also obtained authority from the court to make partial cash distributions to each of the will beneficiaries. The inventory was not filed on or before November 28, but was filed on January 19, 1994. Simultaneously with filing the inventory, respondent secured an order allowing payment of maximum ordinary fees of $12,777.81 for himself as executor plus an additional $12,777.81 for himself as attorney for the estate. That order authorized payment of one-half of the fees immediately and the remaining one-half upon the filing of the final report and the payment of costs.

Respondent's application for attorney fees recited that the federal tax return and decedent's final income tax returns had been filed but omitted any disclosure concerning preparation of an Iowa inheritance tax return. Pursuant to Iowa Rule of Probate Procedure 2(d), filing of the inheritance tax return is a prerequisite to payment of the first one-half of the fees that are allowed by the court. In fact, the inheritance tax return was not filed until three months after respondent had paid himself the first one-half of the fees approved.

In March 1994 respondent obtained written consents from each of the beneficiaries authorizing the sale of certain agricultural property owned by the decedent to respondent for $130,000, which was slightly more than its appraised value. Based on these consents, an order approving that sale was obtained from the court. In April 1995 the executor paid himself the second half of the attorney fees and a substantial portion of the second half of the fiduciary fees previously allowed by the court. The executor's final report was not filed until July 13, 1995. The prior order of the probate court allowing fees had specified that the second one-half thereof should not be paid until the final report had been filed and costs paid.

The final report had no accounting attached and, although it recited that an accounting of all property coming into the hands of the executor and a detailed accounting of all cash receipts was being provided each distributee, that was not the case. Respondent did not furnish certain of the will beneficiaries copies of the final report until more than a year after it was filed. One of the beneficiaries when finally apprised of the final report, filed objections thereto. Among the items objected to were the failure to include an accounting and an objection to the amount of attorney fees previously allowed by court

order. In ruling on the objections to the final report, the district court concluded that respondent had misrepresented certain matters to the court in that document. These included (1) a representation that an accounting had been made to the distributees, (2) a representation that the certificate of aquittance for Iowa income tax was on file when it was not, and (3) a representation that each distributee had receipted for his or her proper distribution, which was not true.

The court ordered respondent to show cause why he should not be removed as executor and as attorney for the estate. Based on his failure to file proper accountings, he was subsequently removed and ordered to make full accounting to a successor executor appointed by the court and to deliver all checks, deposit slips, and other records of the estate to that party. For a period of more than seventeen months to and including the hearing before the Grievance Commission on these pending ethical violations, respondent failed to comply with that order. The only excuse that he offered to that commission for failing to account to the successor-executor and turn over the estate records was the fact that the bank, which had been designated as successor-executor, was the same bank on which all of the checks were written and in which the deposits of estate money had been made. Respondent suggested that based on that circumstance the successor-executor already had all the records that it needed.

When the court removed respondent as executor and attorney, it ordered that he refund to the estate all of the attorney fees and executor fees that had been paid to him. That order was entered on January 28, 1998. At the time of the hearing before the Grievance Commission, in June 1999, no monies had been returned pursuant to this order. The court required respondent to file an itemization of his services as executor and attorney and ultimately concluded that he was entitled to $4550 as compensation for his services as

executor and $6705 as compensation for the legal services he had provided. When respondent had not repaid the amount of fiduciary fees and attorney fees required to be refunded by the time the estate was being closed, the court credited the amount of fees that it had determined were properly payable to respondent and the amount of his remaining distribution under the will against the sums required to be refunded. A judgment was entered against respondent for the difference, which totaled $5678.

The distributee who had filed an objection to respondent's final report requested that the attorney fees he had incurred in challenging the report be charged against the general assets of the estate. The court concluded that these services benefited the estate and all distributees, so it did charge those fees in the amount of $1331 against the general assets of the estate.

 It is clear from our decisions that a finding of dishonesty is not essential in order to warrant the imposition of appropriate discipline for a breach of professional responsibility. With regard to the proper discipline to be imposed, we have stated that each case must be considered on its own facts. *Committee on Prof'l Ethics & Conduct v. Martin*, 375 N.W.2d 235, 238 (Iowa 1985); *Committee on Prof'l Ethics & Conduct v. Bitter*, 279 N.W.2d 521, 524 (Iowa 1979).

 As we noted in *Committee on Professional Ethics & Conduct v. Rogers*, 313 N.W.2d 535, 536 (Iowa 1981), a lawyer's obligation to his client requires him to prepare adequately for and give appropriate attention to his legal work. We distinguish professional neglect from mere inadvertence for errors involving professional judgment. Respondent neglected his responsibilities in several particulars. He was delinquent in meeting several deadlines for processing the probate proceeding, which because of his neglect required more than five years to complete. His

removal as executor and attorney for the estate resulted in his successors needing to spend needless additional time reconstructing that which had already occurred in the estate administration. These failures on respondent's part fully support the finding of the Grievance Commission that he violated DR 6–101 and DR 7–101 of the Iowa Code of Professional Responsibility for Lawyers.

In addition, we have held in other cases that withdrawal of attorney fees contrary to the provisions of Iowa Rule of Probate Procedure 2(d) or orders of the court are grounds for discipline because such conduct violates DR 2–106(A). The Grievance Commission's finding that this occurred in the present case also has adequate support in fact. The charge made in the complaint that respondent made false representations in documents filed with the probate court is also substantiated by the evidence, and such conduct is a violation of DR 1–102(A)(4).

The ethical charges against respondent are severely aggravated based on two considerations. These are (1) his persistent refusal to obey the order of the court to refund those fees improperly taken and to turn over records, matters that caused financial prejudice to the other estate distributees, and (2) the fact that respondent has experienced two prior ethical violations. In 1988 he was suspended for sixty days for failure to file state and federal income tax returns for two years. In 1999 he received a public reprimand for neglecting a legal matter entrusted to him.

 We have recognized that there should be a distinction between the punishment imposed in situations involving the existence of multiple instances of neglect, past disciplinary problems, and other companion violations, including uncooperativeness in the disciplinary investigation. *Freeman,* 603 N.W.2d at 604. We have also recognized that more severe discipline is warranted when the ethical violations cause harm to clients or other third parties. *Committee on Prof'l Ethics & Con-*

*duct v. Johnson,* 404 N.W.2d 184, 186 (Iowa 1987). In such instances, restitution in whole or in part may be required as a condition for reinstatement. *Id.*

In assessing the culpability of respondent's multiple and serious breaches of ethics and the harm that has been caused thereby, we are satisfied that the recommended period of suspension is appropriate. Any shorter period would depreciate the seriousness of what has occurred here. We therefore suspend respondent Daniel J. Jay's license to practice law in this state indefinitely with no possibility of reinstatement for one year. This suspension applies to all facets of the practice of law. *See* Ct. R. 118.12.

Upon any application for reinstatement, respondent must establish that he has not practiced law during the suspension period and that he has in all ways complied with the requirements of Court Rule 118.18, including payment of the costs of this disciplinary proceeding. As additional requirements for reinstatement, respondent shall satisfy the judgment against him in favor of the Russell Jay estate and, in addition, reimburse that estate for the amount of attorney fees required to be paid to the objector's attorney concerning challenges made to respondent's final report.

**LICENSE SUSPENDED.**

LARSON, J., takes no part.