OFFICE OF DISCIPLINARY COUNSEL *v.* ZINGARELLI.

[Cite as *Disciplinary Counsel v. Zingarelli* (2000), 89 Ohio St.3d 210.]

(No. 99–1957—Submitted February 8, 2000—Decided June 14, 2000.)

*Jonathan E. Coughlan,* Disciplinary Counsel, and *Lori J. Brown,* First Assistant Disciplinary Counsel, for relator.

*William J. O'Malley,* for respondent.

**Douglas, J.** Respondent objects to the board's findings of fact and conclusions of law with respect to Count One, Count Two, and Count Three. Alleging that the board failed to consider any of the mitigation evidence presented by respondent, particularly the evidence regarding respondent's bipolar disorder, respondent also objects to the board's recommendation of permanent disbarment.

I

With regard to the board's conclusion that respondent violated the Disciplinary Rules as charged in Count One, respondent argues that (1) he was not practicing law by briefly attending two client meetings and (2) he had no obligation to tell people whom he did not represent that his license to practice law had been suspended. We do not find respondent's arguments to be well taken, for the reasons that follow.

The court has repeatedly defined what constitutes the "practice of law." In *Land Title Abstract & Trust Co. v. Dworken* (1934), 129 Ohio St. 23, 1 O.O. 313, 193 N.E. 650, at paragraph one of the syllabus, the court said that the practice of law "embraces the preparation of pleadings and other papers incident to actions and special proceedings and the management of such actions and proceedings on behalf of clients * * * and *in general all advice to clients and all action taken for them in matters connected with the law.*" (Emphasis added.) In *Akron Bar Assn. v. Greene* (1997), 77 Ohio St.3d 279, 280, 673 N.E.2d 1307, 1308, we also indicated that the practice of law "includes the conduct of litigation and those activities which are incidental to appearances in court."

Pursuant to the long-standing authority of *Dworken,* respondent's actions in the Keller and Hrehov matters amount to the practice of law. The board concluded that while respondent's license to practice law was suspended, he conducted client interviews wherein he discussed facts, potential claims, and potential legal remedies of clients' potential cases, discussed and completed fee agreements for clients, and prepared a legal statement for a client's (Hrehov's) disciplinary hearing. In response to the board's findings, respondent contends that the board disregarded his testimony regarding his interaction with Keller and Hrehov, which supports a much less active, and professionally proper, role. Contrary to respondent's arguments, it is of no consequence that the board's findings of fact are in contravention of respondent's or any other witness's testimony. "Where the evidence is in conflict, the trier of facts may determine what should be accepted as the truth and what should be rejected as false." *Cross v. Ledford* (1954), 161 Ohio St. 469, 478, 53 O.O. 361, 365, 120 N.E.2d 118, 123–124, quoted in *Columbus Bar Assn. v. Elsass* (1999), 86 Ohio St.3d 195, 198, 713 N.E.2d 421, 424.

Having heard the witnesses first-hand, the panel made the foregoing findings of fact after determining that the evidence of respondent's misconduct was sufficiently clear and convincing. The panel's findings were subsequently adopted by the board. We find no reason to disturb the board's findings as they relate to Count One, and we accordingly defer to and adopt them. Having adopted the board's findings, we conclude that respondent's conduct with respect to Keller and Hrehov constituted the practice of law as has been broadly defined by this court for many decades.

The only remaining issue with respect to Count One is whether respondent had a duty to truthfully communicate the status of his license to practice law to Dicks and Keller. Respondent denies that he had a duty to inform Dicks and Keller of his suspension because respondent did not represent them. In addition to having already determined that respondent did engage in the practice of law with respect to Keller, we find that respondent's argument is not well taken, as his duty to inform Dicks and Keller of his suspension was independent of whether respondent represented Dicks and Keller. See, *e.g., Columbus Bar Assn. v. Elsass,* 86 Ohio St.3d at 199, 713 N.E.2d at 424–425 (violation of DR 1–102[A][4] ).

Although respondent's suspension order did not specifically instruct him that he had a duty to inform persons other than current clients and opposing counsel of his suspension, respondent did have a professional responsibility to provide accurate and honest information regarding the status of his law license. DR 1–102(A)(4) forbids a lawyer to "engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." By telling Dicks and Keller that he was retiring from the practice of law, rather than telling them that he was suspended from the practice of law, respondent was dishonest and deceitful, and thus in violation of DR 1–102(A)(4). As noted by relator, "retiring" connotes a *future* intention on the part of respondent to discontinue his law practice. That depiction failed to properly present the status of respondent's license to practice law. Therefore, the presumption would have been that respondent was currently licensed and authorized to practice. In engaging in this conduct, respondent acted dishonestly and deceitfully toward Dicks and Keller.

For the foregoing reasons, we adopt the conclusions of law by the board that respondent violated DR 1–102(A)(4) (engaging in dishonest and deceitful con-duct), DR 1–102(A)(5) (engaging in conduct prejudicial to the administration of justice), DR 3–101(B) (practicing law in a jurisdiction where to do so would be in violation of the regulations of the profession in that jurisdiction), and DR 7–102(A)(3) (in the representation of a client, failing to disclose information when the law requires disclosure) with respect to Count One.

## II

Respondent submits a separate objection to four of the five disciplinary

violations in Count Two.[4] With respect to respondent's alleged violation of DR 9–102(A) (commingling funds), respondent contends that it is irrelevant that he deposited Matthews's payments into his office account, which contained personal and other business monies. Respondent feels that because he maintained a substantial balance that was always enough to return to Matthews all of the retainer, and because Matthews's retainer would be "eaten up" in the first few weeks of respondent's representation of Matthews, no improper conduct occurred. Respondent is mistaken. Whether Matthews was actually harmed by respondent's misconduct is not germane to the determination of whether respondent's actions violated DR 9–102(A).

DR 9–102(A) instructs that "[a]ll funds of clients paid to a lawyer or law firm, other than advances for costs or expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and *no funds belonging to the lawyer or law firm shall be deposited therein* * * * ." (Emphasis added.) Respondent admitted depositing Matthews's money into respondent's office account, which contained other business money and personal funds. Since the agreed-upon fee had not yet been earned and was therefore refundable at the time respondent made the deposit, respondent violated DR 9–102(A) by commingling Matthews's money with his own. Accordingly, we hold that harm to a client is not a necessary element for there to be a violation of DR 9–102(A).

With respect to the violation DR 2–107(A) (improper division of attorney fees), respondent contends that it was not unethical to pay Villwock from the fees that Matthews had paid to him because Matthews was aware of Villwock's involvement and Matthews consented to Villwock's payment. We disagree. Recalling that Villwock and respondent were not members of the same law firm, we find that respondent, regardless of whether Matthews was aware of Villwock's involvement, had a duty to comply with DR 2–107(A).

In relevant part, DR 2–107(A) allows lawyers who are not in the same law firm to share fees, but only if the client consents and the terms of the division and the identity of all lawyers sharing in the fee are fully disclosed in writing to the client. In *King v. Housel* (1990), 52 Ohio St.3d 228, 230, 556 N.E.2d 501, 504, we rejected the contention that DR 2–107(A) would be satisfied if the retained attorney informed his client only that another attorney would be paid for assisting the retained attorney. The court stated that the duty of full disclosure pursuant to DR 2–107(A) requires that "the amount to be paid and manner of payment, as well as other relevant fee agreements, be disclosed to the client by

---

4. As to the final violation in Count Two, DR 2–106(A) (charging a clearly excessive fee), respondent makes no explicit separate objection, although he does argue that the fee was reasonable, and even low. We agree with the board that the fee was clearly excessive.

his attorney." *Id.* at paragraph one of the syllabus. Here, respondent was the attorney retained by Matthews; thus, it was his responsibility to comply with all of the fee-sharing disclosure requirements of DR 2–107(A)(1) through (3). *Id.* At a minimum, respondent violated DR 2–107(A) by failing to disclose in writing Villwock's identity and Villwock's portion of the fees.

Respondent next maintains that he returned Matthews's unearned fee in a timely manner and therefore did not violate DR 2–110(A)(3), which requires a prompt return of any unearned fee after a lawyer withdraws from employment. We do not agree that respondent returned Matthews's fee promptly. Respondent was required to return Matthews's unearned fee on the date of his suspension, February 18, 1998. Since respondent did not return Matthews's unearned fee until July 23, 1998, we agree with the board and adopt its conclusion of law that respondent violated DR 2–110(A)(3).

With respect to DR 1–102(A)(4) (engaging in dishonest or deceitful conduct), respondent asserts that there was no clear and convincing evidence of any violation. As previously discussed, respondent provided at least four inconsistent explanations for his billing in the Matthews matter. Having initially advised Matthews that he had expended his initial retainer, respondent ultimately sent Matthews a refund check of $935 without any further explanation. Respondent, in his objections to the board's recommendation, attempts to explain the discrepancies by referring to the billing variations as "three offers of compromise." Respondent's billing, however, should have been based upon the precise terms in the Matthews's fee agreement, and not on a barter system designed by respondent. In considering respondent's arguments, we find respondent's various explanations for the Matthews billings to be acts of dishonesty, and not offers of compromise. For all of the foregoing reasons, we adopt the conclusions of law by the board that respondent violated DR 9–102(A) (commingling funds), DR 2–107(A) (improper division of attorney fees), DR 2–110(A)(3) (failure to promptly return unearned fee after withdrawing from employment), DR 2–106(A) (charging a clearly excessive fee), and DR 1–102(A)(4) (engaging in dishonest and deceitful conduct) with respect to Count Two.

## III

Respondent disputes the findings of fact with respect to Count Three based upon the panel's exclusive reliance on Blaine's testimony. Count Three included violations of DR 1–102(A)(5) (engaging in conduct prejudicial to the administration of justice), DR 2–103(A) (without solicitation, recommending one's self for employment to a nonlawyer), and DR 1–102(A)(4) (engaging in dishonest and deceitful conduct). For the same reasons discussed herein with respect to Count One, the court declines to overturn the panel's findings when it was the panel

members, and not this court, who had the opportunity to evaluate the character and demeanor of the witnesses. After evaluating the witnesses, the panel found Blaine to be more credible than respondent. We therefore reject respondent's objections, as there is clear and convincing evidence to support the panel's findings of fact. Further, we adopt the conclusions of law by the board that respondent violated three of the four Disciplinary Rules stated in Count Three.

## IV

In the next section of objections, respondent proffers two obscure due process arguments in which he claims that the disciplinary proceeding was tainted and that he was prejudiced throughout the disciplinary proceeding. Respondent suggests that he was denied due process when his office account records were subpoenaed and when Count Four was added late to relator's amended complaint. Since the board found no violations of the Code of Professional Responsibility with respect to Count Four, we find it unnecessary to discuss respondent's arguments related to the addition of Count Four.

With regard to respondent's office account bank records, respondent contends that he was deprived of his due process rights because he had to defend against issues relating to his office account that were not alleged in relator's amended complaint. We do not find any merit in respondent's argument, as relator's subpoena to the bank for the production of the account records and certain canceled checks was related to the allegations against respondent for commingling funds and practicing law after his suspension. Thus, we conclude that respondent's due process rights were not compromised as a result of the subpoena to the bank to produce the office account records, and that the board did not err in considering respondent's bank account records.

Respondent's final argument is that he was denied due process as a result of Justice Evelyn Lundberg Stratton's participation in this court's prior decision imposing a two-year suspension upon respondent.[5] Respondent submits that Justice Lundberg Stratton was biased against him, as she was the trial judge in the underlying case from which respondent's first disciplinary charges arose. As a result of the justice's involvement with respondent as the trial judge, respondent claims, his substantive due process rights were violated because Justice Lundberg Stratton was a biased decisionmaker in respondent's prior disciplinary proceeding.

For the reasons that follow, we find that respondent was not deprived of his substantive due process rights as he alleges. There is *no* evidence of any

---

5. It should be noted that Justice Lundberg Stratton has recused herself in the instant case and has taken no part in the court's deliberations.

222

substantive prejudice to respondent in connection with his prior disciplinary case. In fact, in *Disciplinary Counsel v. Zingarelli* (1998), 81 Ohio St.3d 86, 689 N.E.2d 545, we issued a six-to-one decision suspending respondent for two years. Although Justice Lundberg Stratton was in the majority of that decision, there is no evidence to support the contention that our ruling would have been different if Justice Lundberg Stratton had not participated. Further, we agree with relator that respondent's arguments are impermissible collateral attacks on this court's previous decision. Accordingly, respondent's objections and arguments are rejected as procedurally improper and substantively insufficient.

## V

We now come to the issue of what penalty is appropriate in light of respondent's professional misconduct. After considering all of the evidence and the mitigating circumstances presented, both the panel and board recommended that respondent be permanently disbarred from the practice of law.

In *Dayton Bar Assn. v. Shaman* (1997), 80 Ohio St.3d 196, 201, 685 N.E.2d 518, 521, we stated that "when imposing a sanction, we will consider not only the duty violated, but the lawyer's mental state, the actual injury caused, and whether mitigating factors exist." The underlying disciplinary violation is respondent's continued practice of law while under suspension. In addition, however, respondent violated a number of other Disciplinary Rules.

In this case, we acknowledge respondent's bipolar disorder which *contributed* to respondent's misconduct, and, accordingly, the respondent is indefinitely suspended from the practice of law in Ohio.

*Judgment accordingly.*

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER and KNEPPER, JJ., concur.

COOK, J., dissents.

RICHARD W. KNEPPER, J., of the Sixth Appellate District, sitting for LUNDBERG STRATTON, J.