**IOWA SUPREME COURT BOARD OF PROFESSIONAL ETHICS AND CONDUCT, Complainant,**

v.

**Stephen William RUTH, Respondent.**

No. 02–1209.

Supreme Court of Iowa.

Dec. 18, 2002.

As Amended on Denial of Rehearing Feb. 10, 2003.

Norman G. Bastemeyer and Charles L. Harrington, Des Moines, for complainant.

J.E. Tobey III, Davenport, for respondent.

STREIT, Justice.

Stephen W. Ruth, an Iowa attorney, is charged with neglecting his client's legal matters, making a misrepresentation to the court and to his client, failing to provide an accounting of estate funds, and failing to distribute funds to beneficiaries. The Iowa Supreme Court Board of Professional Ethics and Conduct filed a complaint against Ruth with our Grievance Commission alleging he violated several ethical rules. The Commission recommended we suspend Ruth's license to practice law for four months. Our review is required by Iowa Court Rule 35.10 (2002). We concur with the Commission's findings but suspend Ruth's license for two years.

## I. Background and Facts

Stephen W. Ruth has been a practicing attorney in Bettendorf, Iowa, since 1976. In 2001, we suspended Ruth's license to practice law for six months following his felony conviction of operating while intoxicated and domestic assault. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Ruth,* 636 N.W.2d 86 (Iowa 2001). Ruth's personal problems leading to the 2001 suspension stem from his alcoholism. Since the suspension, Ruth has been working at a supermarket in a supervisory position. Though his 2001 suspension term has passed, Ruth has not yet applied to have his law license reinstated. The ethical violations leading to the current disciplinary action occurred before the 2001 suspension but have only come to light after the suspension.

Ruth was the attorney and executor of the estate of Janice Kerofsky from the opening of the estate in 1994 until the closing in 1999. Ruth failed to close the estate according to the procedure articulated in Iowa Code section 644.473 (1999). In 1997, Ruth filed a final report with the court but did not close the estate until almost two years later.

In 1994, Ruth was authorized the statutory maximum fee for his services as attorney and executor. The maximum attorney fee that the court allowed was $7053. Ruth also received an executor's fee of the same amount. The court entered an initial order permitting Ruth to immediately pay himself three-quarters of his total fees. He took the authorized fees of $10,579 and disclosed them on the accounting report. Later in 1995, Ruth took two other unauthorized payments of $1763.25, each representing the remaining one-quarter of his legal and executor fees. Ruth admits taking unauthorized fee payments totaling over $3526. Ruth failed to disclose the unauthorized payments. He also misrepresented to the court the funds in the estate in accountings he filed in 1996, 1997, and 1999. Ruth did not take more from the estate than the court originally authorized.

However, there was a subsequent change to the amount of attorney fees Ruth could receive. In 1997, after extensive negotiations, Ruth and the beneficiaries agreed to waive what the beneficiaries thought remained of the one-quarter legal and executor fees. At the time Ruth and the beneficiaries agreed to the reduction, Ruth did not tell them that he had already taken the fees out of the estate. The court confirmed this agreement and reduced the authorized legal and executor fees. When the court entered this order, Ruth did not tell the court of the unauthorized payments. He submitted a supplemental accounting to the court in 1999 indicating the money—the remaining one-quarter of his legal fees—was still present in the estate's accounts.

In Ruth's 1997 final reports, he reported a balance of $4185 in the Kerofsky estate. This was a misrepresentation, as there was

little more than $630 in the estate account at that time. The discrepancy is a direct result of the two unauthorized payments Ruth took in 1995 and had not disclosed to the court. In 1998 and before the closing, Ruth deposited $750 in the estate as a partial repayment for the unauthorized fee payments. Ruth did not inform the court he was making restitution to the estate. After the closing, Ruth deposited $730 into the estate for court costs. Although Ruth claims to have made numerous other repayments to the estate, he has neither documented nor accounted for these alleged additional repayments.

In 1999, a hearing on Ruth's supplemental final accounting came before the court. Ruth reported $1852 of funds were available for distribution to Kerofsky's beneficiaries. Again this figure was a misrepresentation because it reflected Ruth's calculation of what he would still owe the estate after paying the following amounts out of his own pocket: 1) $750 as a partial repayment of his unauthorized withdrawals; 2) $730 in court costs which Ruth had not yet deposited and would not deposit until two months after the closing; and 3) $220 in taxes owed by the estate. On the day of the hearing, Ruth gave a check in the amount of $1852 to J.E. Tobey III for distribution.

## II. Scope of Review

We review attorney disciplinary proceedings de novo. *Iowa Supreme Court Bd. of Prof'l Ethics & Conduct v. Rauch*, 650 N.W.2d 574, 576 (Iowa 2002); Iowa Ct. R. 35.10. We give respectful consideration to the Grievance Commission's findings and recommendations, but are not bound by them. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Grotewold*, 642 N.W.2d 288, 293 (Iowa 2002). The Board has the burden to prove misconduct by a convincing preponderance of the evidence. *Id.* "On review we may adopt, increase, or reduce the sanction recommended by the commission." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Eich*, 652 N.W.2d 216, 217 (Iowa 2002).

## III. Violations

Based upon Ruth's misconduct, the Commission found he violated several rules of professional responsibility. First, the Commission concluded Ruth violated DR 6–101(A)(3) prohibiting a lawyer from neglecting a client's legal matter. Because Ruth took money for his fees before it was authorized by the court, the Commission found Ruth violated DR 2–106(A) prohibiting a lawyer from collecting an illegal or clearly excessive fee. Ruth's conduct also violated DR 9–102(B)(3) and (4). These rules provide a lawyer shall "maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to the client regarding them." DR 9–102(B)(3). Additionally, a lawyer shall "[p]romptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive." DR 9–102(B)(4). Finally, because Ruth lied to the court about the status of the estate, the Commission found he violated DR 1–102(A)(4) prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation. The Commission recommended we suspend Ruth's license to practice law for four months.

### A. Neglect of Client's Legal Matters

Ruth's conduct in failing to close the Kerofsky estate as required by the Iowa Code violates DR 6–101(A)(3): A lawyer shall not neglect a client's legal matter. Iowa Code section 633.473 pro-

vides, "[f]inal settlement shall be made within three years ... unless otherwise ordered by the court after notice to all interested parties." Ruth submitted his final report to the court in 1997. It was not until almost two years later that he closed the estate. In 1997, after making his final report to the court, the court ordered Ruth to distribute the remaining funds to the beneficiaries. Ruth failed to comply with this order and failed to comply with section 633.473. For over three years, Ruth neglected to distribute the money to the beneficiaries. Ruth's failure to distribute the bequests in a timely manner resulted in Ruth's confession of judgment in favor of one of the beneficiaries.

## B. Unauthorized Fee and Failure to Account and Disburse Funds

■ Ruth failed to provide an accounting or explanation for why he had not distributed the money to the beneficiaries. Later, the reason for delay in the distribution became apparent. Ruth took unauthorized fee payments in 1995 totaling $3526.50. He did not obtain court approval to withdraw these funds from the estate. This conduct violated DR 2–106(A): "A lawyer shall not ... collect an illegal or clearly excessive fee." *See, e.g., Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. D'Angelo*, 619 N.W.2d 333, 337 (Iowa 2000); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Jay*, 606 N.W.2d 1, 4 (Iowa 2000).

■ Initially when Ruth paid himself the remaining one-quarter of his legal and executor fees absent court approval, it appeared he would eventually be entitled to those funds when he closed the estate. Because Ruth paid himself before earning the fees he is guilty of misappropriating his client's funds. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Sullins*, 648 N.W.2d 127, 134 (Iowa 2002); *Iowa*

*Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Apland*, 577 N.W.2d 50, 56 (Iowa 1998) (intentional taking of entrusted client funds as fees before earning them is misappropriation). Later, the situation changed because Ruth did not remain entitled to the initial amount of court-ordered legal and executor fees. At the time the court confirmed the agreement to reduce Ruth's fees, Ruth did not tell the court he had already taken the remaining one-quarter legal fees without approval. He did not tell the court he was trying to pay the unauthorized fees back into the estate. This does not change the nature of Ruth's violation. We still have before us a case of misappropriation.

■ Ruth was unable to provide an accounting of estate funds because, at the time of the closing, the estate did not have the money needed to complete distribution. Ruth took the money from the estate for his personal use. Ruth's failure to provide any accounting violates DR 9–102(B)(3) which provides a lawyer shall "maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to the client regarding them." Not only did Ruth fail to provide an accounting, but he failed to distribute funds in a timely fashion. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Lemanski*, 606 N.W.2d 11, 12–13 (Iowa 2000) (one-year delay in disbursing settlement funds to client and failure to render those funds resulted in violation of DR 9–102(B)(3) and (4), DR 1–102(A)(1), (5), and (6)); *In re Baldwin*, 246 Ga. 344, 271 S.E.2d 626, 626 (1980) (imposing indefinite suspension where a lawyer delayed four months before notifying client and making distribution of funds from real estate sale, distribution check then bounced though client suffered no financial loss); *In re Lingle*, 27 Ill.2d 459, 189 N.E.2d 342,

346 (1963) (disbarring attorney for delay of more than one year in distributing settlement proceeds and for other ethical violations); *Disciplinary Counsel v. Zingarelli,* 89 Ohio St.3d 210, 729 N.E.2d 1167, 1175 (2000) (imposing indefinite suspension for five-month delay in returning unearned fee to client following lawyer's earlier suspension and for other ethical violations). Ruth's failure to distribute bequests violates DR 9–102(B)(4) which provides a lawyer shall "promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive."

### C. Misrepresentation

■ Ruth's violations of neglect, collection of illegal fees, and failure to provide an accounting of client funds are compounded by a very serious ethical violation. Ruth lied to the court to cover up all of his misconduct. He lied to the beneficiaries regarding the amount of funds present in the estate accounts. He misrepresented to the court the amount of funds in the estate in several accounting reports. Ruth disclosed neither his unauthorized payments, nor the fact he was trying to make restitution to the estate for those withdrawals. Ruth led the court to believe the remaining one-quarter legal and executor fees were still present in the account at the time he and the beneficiaries agreed to waive those fees. Ruth's misconduct violated DR 1–102(A)(4) prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation.

### IV. Sanction

■ In determining the appropriate sanction we consider both aggravating and mitigating circumstances. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Sherman,* 637 N.W.2d 183, 187 (Iowa 2001).

We also consider " 'the nature of the alleged violations, the need for deterrence, protection of the public, maintenance of the reputation of the [bar] as a whole, and the respondent's fitness to continue to practice law.' " *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Hohenadel,* 634 N.W.2d 652, 655 (Iowa 2001) (quoting *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Freeman,* 603 N.W.2d 600, 603 (Iowa 1999)).

■ This case comes to us on the heels of Ruth's prior disciplinary proceeding. In 2001, we suspended him for six months for criminal convictions for operating while intoxicated, third offense, and domestic abuse assault causing injury. *Ruth,* 636 N.W.2d at 89. There we recognized Ruth's alcoholism as being the root of his professional misconduct. *Id.* at 87. Ruth's past suspension is an aggravating circumstance in the case before us.

Ruth's performance in the Kerofsky estate is no doubt directly related to his alcoholism. In mitigation of Ruth's 2001 suspension, we stated Ruth "has made great strides in his battle with alcoholism." *Id.* at 89. Though the ethical violations now before us also stem from Ruth's serious alcoholism, he has remained vigilant in his dedication to overcome this problem. Although we commend Ruth for this progress, his efforts toward rehabilitation do not eliminate the need for a sanction in this case.

Ruth's conversion of the remaining estate funds for his own use is a serious ethical violation. Such extreme unethical misconduct ordinarily warrants revocation. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Leon,* 602 N.W.2d 336, 338 (Iowa 1999) (revocation of lawyer's license to practice law for repeated misappropriation of several clients' funds); *Comm. on Prof'l Ethics & Conduct v. Ottesen,* 525 N.W.2d 865, 866 (Iowa 1994) (license re-

voked where attorney converted $7000 in client trust funds to his own use). However, we have on occasion imposed a lesser sanction "when the commingling appeared negligent, rather than intentional, the funds were not knowingly converted to the lawyer's own use, no client suffered financial loss, or other unique facts mitigated in favor of leniency." *D'Angelo*, 619 N.W.2d at 339 (three-year suspension for lawyer's acceptance of fees without prior court approval and before lawyer earned them). *See also Rauch*, 486 N.W.2d at 39–40 (one-year suspension for several ethical violations including lawyer's conversion for his personal use of $5000 intended as a gift in trust for his son); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Allen*, 586 N.W.2d 383, 391 (Iowa 1998) (one-year suspension for taking unauthorized fees and misappropriating funds from conservatorship); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Gottschalk*, 553 N.W.2d 322, 325 (Iowa 1996) (one-year suspension for taking $1000 from trust account to pay office expenses). Ruth's conduct in converting estate funds to his own use bespeaks of fundamental dishonesty to his client. *See* DR 1–102(A)(4).

Misrepresentation made to clients and to the court warrants a more severe sanction than neglect standing alone. *Hohenadel*, 634 N.W.2d at 655–56. Because honesty is crucial to the judicial process and administration of justice, a misrepresentation by a lawyer "generally results 'in a lengthy suspension of the license to practice law.'" *Id.* at 656 (quoting *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Stein*, 603 N.W.2d 574, 576 (Iowa 1999)).

The ethical violations before us in this disciplinary proceeding were not considered at the time of Ruth's 2001 suspension. Over the course of several years, Ruth engaged in a lengthy pattern of un-ethical conduct involving misappropriation, deceit, and neglect. To conceal his misappropriation of his client's estate funds, Ruth lied to the court and to the beneficiaries. Ruth also failed to promptly pay his clients their money. When asked to account, Ruth was unable to comply because he had drained the estate of its funds. Based upon these violations, we find a suspension is warranted.

When the Commission recommended a four-month suspension it appeared to indicate a reduced sanction was appropriate because Ruth had recently been suspended and because he has not been practicing law since the end of the previous suspension term. However, we see no reason to reduce Ruth's sanction for a voluntary suspension from the practice of law. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Adams*, 623 N.W.2d 815, 819 (Iowa 2001) (reduction of suspension not granted where respondent "self-imposed" a suspension for failing to file his continuing legal education requirements); *Comm. on Prof'l Ethics & Conduct v. Martin*, 375 N.W.2d 235, 239 (Iowa 1985) (where period of temporary suspension arose out of separate violation, no reduction of suspension will be granted for subsequent misconduct). Ruth was free to apply for reinstatement when his 2001 suspension terminated. Though there is a lapse in time between the end of his last suspension and resolution of the current complaint, the relative speed of the appellate process does not function as a ground upon which we will reduce a respondent's suspension. Likewise, Ruth's recent suspension does not serve to reduce the sanction otherwise warranted by his misconduct in the case before us. *See id.*

We therefore suspend Ruth's license to practice law with no possibility for reinstatement for a period of two years from the filing of this opinion. Iowa Ct. R.

35.12. Upon any application for reinstatement, Ruth shall be required to establish that he has not practiced law during the period of suspension and that he has in all other ways complied with the requirements of Iowa Court Rule 35.21. The costs of this action shall be taxed to Ruth pursuant to Iowa Court Rule 35.25.

**LICENSE SUSPENDED.**

All justices concur except NEUMAN, J., who dissents.

NEUMAN, Justice (dissenting).

I respectfully dissent. The disposition of Ruth's current infractions is essentially academic because, in my view, his prior conviction of a felony called for disbarment. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Ruth*, 636 N.W.2d 86, 89 (Iowa 2001) (Neuman, J., dissenting).