IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 111,424

In the Matter of RODNEY K. MURROW,
*Respondent*.

ORIGINAL PROCEEDING IN DISCIPLINE

Original proceeding in discipline. Opinion filed October 24, 2014. One-year suspension.

*Alexander M. Walczak*, Deputy Disciplinary Administrator, argued the cause, and *Stanton A. Hazlett*, Disciplinary Administrator, was with him on the formal complaint for the petitioner.

*James M. Kaup*, of Kaup Law Office, of Topeka, argued the cause, and *Rodney K. Murrow*, respondent, argued the cause pro se.

*Per Curiam*:  This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, Rodney K. Murrow, of Lenexa, an attorney admitted to the practice of law in Kansas in 1990.

On December 27, 2013, the office of the Disciplinary Administrator filed a formal complaint against the respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC). The respondent filed an answer on January 22, 2014. A hearing was held on the complaint before a panel of the Kansas Board for Discipline of Attorneys on February 25, 2014, where the respondent was personally present and was represented by counsel. The hearing panel determined that respondent violated KRPC 1.1 (2013 Kan. Ct. R. Annot. 446) (competence); 1.3 (2013 Kan. Ct. R. Annot. 464) (diligence); 1.4(a) (2013 Kan. Ct. R. Annot. 484) (communication); 1.16(a)(2) and (d) (2013 Kan. Ct. R. Annot. 569) (termination of representation); 3.2 (2013 Kan. Ct. R. Annot. 587) (expediting

1

litigation); and 3.4(d) (2013 Kan. Ct. R. Annot. 601) (failure to respond to discovery request).

Upon conclusion of the hearing, the panel made the following findings of fact and conclusions of law, together with its recommendation to this court:

"*Findings of Fact*

. . . .

"*Representation of J.B.*

"8.     On November 30 , 2011, J.B. retained the respondent to represent him in connection with an employment matter. J.B. paid the respondent $5,000 for the representation. The representation concerned J.B.'s former employer's allegation that J.B. violated the non-compete clause of his employment agreement by going to work for his new employer.

"9.     The respondent recommended that J.B. file a lawsuit against the former employer to obtain a temporary restraining order and a permanent injunction, preventing the former employer from interfering with J.B.'s current employment.

"10.     On December 6, 2011, the respondent filed suit against J.B.'s former employer.

"11.     On October 25, 2012, the defendant filed a motion for summary judgment. The respondent failed to file a response to the motion for summary judgment. On December 4, 2012, the court sent an electronic mail message to counsel for all the parties of the litigation. In the message, the court stated:

'It looks to me like defendant's motion for summary judgment on plaintiff's claims and for partial summary judgment on the counterclaims . . . has gone unopposed under Kansas Supreme Court Rule 141. I have reviewed the unopposed motion and it appears it should be granted. You

2

may prepare and circulate an appropriate Journal Entry and bring it with you for approval on December 10 at 3 PM when we will have our Pretrial Conference per the Case Management order and take up defendant's motion to amend for punitive damages . . . .'

"12.     The respondent did not appear for the pretrial conference, scheduled for December 10, 2012. Rather, the respondent filed a motion seeking to stay the proceedings and set aside orders due to his personal medical emergency. The respondent provided a letter from his psychiatrist, *in camera*. The letter provided:

'I am writing on behalf of Rod Murrow as his treating physician. Mr. Murrow is currently unable to proceed in his professional capacity due to medical reasons. The issues relating to his current disability include the presence of severe depression for at least the last 9 months including the presence of suicidal ideation resulting in a review of his life insurance policy. Psychiatric interventions have included medications and psychotherapy. Inpatient hospitalization is being considered. He is being placed on medical leave from his current employment, as he is overwhelmed with the demands of his job. Anything the court could do to accommodate his current illness would be greatly appreciated.'

"13.     The court denied the respondent's medical emergency motion to stay proceedings, the court granted the respondent's motion to continue the pretrial hearing, and the court granted the defendant's motion for summary judgment. The court continued the pretrial hearing to January 17, 2013, and ordered the respondent 'to have co-counsel enter his/her appearance, or to show cause why co-counsel is not needed, with full disclosure by counsel to [J.B.] as required by KRPC 1.16, no later than December 28, 2012.' The respondent did not provide J.B. with full disclosure under KRPC 1.16, as ordered by the court.

"14.     On January 17, 2013, the respondent appeared at the pretrial hearing without co-counsel, without replacement counsel, without his client, and without showing cause why co-counsel should not be required. The respondent informed the court that he

3

had been in contact with another attorney, but that he did not believe replacement counsel or co-counsel would be necessary. The respondent failed to adequately explain why replacement counsel or co-counsel would not be necessary. The court again continued the case. The court scheduled a hearing for February 19, 2013.

"15.    On January 21, 2013, the respondent's physician prepared a second letter. That letter provided:

'I am writing on behalf of Rod Murrow as his treating physician and to update my 12-03-2012 correspondence. Based on additional information received after my December 3 letter, it also now appears that Mr. Murrow's depression has a significantly longer history than the previous 9 months, as indicated in my previous letter.

'Mr. Murrow responded well to treatment for severe depression and returned to work as expected on 1-07-2013. However, shortly after he returned to work, he experienced a setback. Such setbacks when coming off an initial medical leave, in cases such as his, are not uncommon. I've instructed him to briefly extend his leave to through [*sic*] February 1, 2013. I anticipate he will be able to return to full-time employment without restrictions, after that date. Given his promising response to treatment, I believe he has an encouraging prognosis going forward from that date.

'Anything the court could do to accommodate his current illness would be greatly appreciated.'

"16.    From November 6, 2012, to February 14, 2013, the respondent had no contact with J.B. On February 15, 2013, the respondent informed J.B. of the respondent's personal difficulties and the status of the litigation.

"17.    On February 17, 2013, J.B. terminated the respondent's representation. J.B. retained Patrick G. Reavey.

4

"18.    On February 18, 2013, the respondent's physician prepared another letter. The letter provided:

'I am writing on behalf of Rod Murrow as his treating physician to update my previous correspondence. I am pleased to report that he has responded extremely well to treatment following the extension of his leave in January and has returned to work full strength. Additionally, I have reviewed the portion of the Court's order issued on December 10, 2012, regarding Mr. Murrow's requirement to report to the court by December 28, 2012, whether co-counsel would be required, to provide full disclose [*sic*] of his condition to his client, and to respond to a motion for punitive damages.

'In my medical opinion, it was not medically possible for Mr. Murrow to comply with the court order. As stated in my December 3 correspondence, Mr. Murrow was placed on a 30-day leave. The December 10 order ignored or disregarded that medically-ordered leave and required him to perform work that he was expressly medically forbidden from performing during that leave. Further, to the extent that Mr. Murrow attempted to comply with this order, those additional demands during his required leave period likely delayed his recovery and contributed to the setback that he experienced in January which required the extension of his leave.

'It was my medical opinion when I placed Mr. Murrow on leave on December 3 that, with the appropriate leave and treatment, that [*sic*] he should recover and be able to return to work following his leave. Unfortunately, Mr. Murrow's medical leave was not honored, rendering him medically unable to comply with the court's orders and contributing to his subsequent setback and extension of his leave.'

5

"19.     On February 19, 2013, the respondent filed a notice of withdrawal. That same day, the court held a hearing. The respondent appeared at the hearing, as did Mr. Reavey. The court allowed the respondent to withdraw from the representation of J.B.

"20.     On February 27, 2013, Judge Vano filed a complaint with the disciplinary administrator.

"21.     On February 28, 2013, J.B. filed a complaint with the disciplinary administrator.

"22.     On April 10, 2013, Patrick G. Reavey filed a complaint against the respondent for his representation of J.B.

"23.     At some point, the court vacated its previous order granting the defendant's motion for summary judgment in J.B.'s case. On May 8, 2013, the court denied the defendant's motion for summary judgment.

"24.     On May 10, 2013, the respondent wrote to Mr. Reavey. The respondent's letter provided as follows:

'When we first spoke shortly after you undertook representation of [J.B.], I stated that I would do my best to assist [J.B.] in whatever way I could. I meant that.

'Please find enclosed my firm check in the amount of $500 to assist with their legal fees. I realize it's not much but, even though I am back to my old self and doing better than I have in years (if not decades), my practice still has a long way to go to recover from the devastating effects that my depression had on it. I will continue to do as much as possible to assist [J.B.] whenever possible.

'I was very pleased to notice that Judge Sutherland did the right thing (factually, legally and morally) in denying the request for summary

judgment. I am extremely pleased that this matter is now assigned to a different division. I remain absolutely convinced that [J.B.]'s current employment doesn't violate his restrictive covenant in any way, shape or form, which was the whole reason we sought the protection of the TRO in the first place. I am confident that the case can and will be resolved in [J.B.]'s favor.

'I remain willing to assist, at no cost, in whatever way you, [or J.B.] desire, but I absolutely understand if my assistance is not desired or sought. As usual, if you have any questions, please do not hesitate to contact me at any time.'

On May 29, 2013, J.B. returned the $500 check to the respondent. At the hearing on this matter, J.B. testified that he returned the check because he wanted to preserve his ability to seek a professional malpractice case against the respondent.

"25.     On January 15, 2014, the respondent's physician wrote an open letter regarding the respondent. The letter provides:

'I am writing on behalf of Rod Murrow as his treating physician. On December 3, 2012, I diagnosed Mr. Murrow with severe depression and ordered him to take 30-day medical leave from his law practice. That leave was later extended for another month, and Mr. Murrow returned to work on February 4, 2013. Mr. Murrow was responding well to treatment at that point. I have continued to treat Mr. Murrow and he has complied with all therapeutic recommendations.

'During my continued treatment of Mr. Murrow over the last year, it has become clear that his depression long predates the diagnosis on December 3, 2012. I believe that Mr. Murrow had been suffering from severe depression, untreated and unrecognized, for at least several years prior to December 3, 2012. To Mr. Murrow's credit, I am

7

somewhat surprised that he was able to function professionally on any level during that time.

'My continued treatment of Mr. Murrow has also revealed what I believe is a unique, singular trigger for his depression, and that is his occupation—the active practice of law. While Mr. Murrow has responded to treatment and made progress in the last year, a consistent pattern has emerged which demonstrates that his occupation and occupation-related stress continue to be a trigger that has prevented his full recovery. Continued exposure to this occupational trigger will mean continued issues with his severe depression, even with treatment, and continued impairment of his occupational duties.

'As [*sic*] result, it is my medical opinion that it is necessary for Mr. Murrow to cease practicing law in order to facilitate his full recovery from severe depression, and I have ordered him to do so. To continue to practice law is to continue daily exposure to the unique, singular trigger for his severe depression, resulting in continued occupational impairment and preventing a full recovery. In particular, Mr. Murrow should, as quickly as practicable, cease or withdraw from active litigation, then close out other non-litigation matters as soon as possible. Mr. Murrow is following my therapeutic recommendation and actively pursuing employment opportunities outside the active practice of law. As to his potential return to the practice of law; only time will tell.'

"*Representation of K.B.*

"26.      On April 17, 2012, K.B. retained the respondent to represent her in her effort to purchase her parent's share of a business which she co-owned with them. K.B. paid the respondent $2,000 for the representation. K.B. and her parents were in strong disagreement regarding the future of the business.

8

"27.     The respondent advised K.B. to initiate a lawsuit against her parents, forcing them to dissolve the family business or sell their ownership interest to K.B. K.B. opposed the respondent's recommendation to sue her parents.

"28.     For a period of 4 months, the respondent performed little or no work on K.B.'s representation.

"29.     On September 25, 2012, K.B. terminated the respondent as her attorney. K.B. retained Matthew P. Dykstra to replace the respondent. Mr. Dykstra needed K.B.'s client file so that he could properly represent her. K.B. requested that the respondent return her client file and provide an accounting of the $2,000.

"30.     On seven separate occasions between October 9, 2012, and May 17, 2013, Mr. Dykstra contacted the respondent and requested that the respondent forward K.B.'s file and accounting to Mr. Dykstra. On April 9, 2013, the respondent called Mr. Dykstra and briefly spoke to Mr. Dykstra regarding K.B.'s representation. Otherwise, the respondent failed to respond to the requests for information.

"31.     Finally, on June 4, 2013, the respondent apologized for the delay and stated, '[t]he file is getting pulled and copied. I'm in a mediation all day tomorrow but I should be able to get this all out to you by Friday or Monday at the very latest.' The respondent never provided the file or the accounting.

"32.     On July 18, 2013, Mr. Dykstra filed a complaint against the respondent.

"*Representation of J.M.*

"33.     On January 11, 2012, on behalf of J.M., the respondent filed suit against American Energy Solutions, Inc., in Johnson County District Court. The respondent, however, failed to prepare a summons for service for approximately a month.

9

"34.    On March 19, 2012, Michael S. Martin, attorney for American Energy Solutions filed an answer and counterclaim. The respondent failed to answer the counterclaim.

"35.    The court scheduled a case management conference for June 4, 2012. The respondent failed to appear at the case management conference. During the conference, the court dismissed J.M.'s suit and granted default judgment against J.M. in the amount of $21,807.32. The court entered the journal entry on June 6, 2012.

"36.    One year later, in June 2013, the respondent filed a motion to set aside the default judgment and reinstate J.M.'s petition. Mr. Martin filed a memorandum opposing the respondent's motion. In August 2013, American Energy sold all of its assets which rendered J.M.'s litigation pointless. No action was taken on the respondent's motion.

"*Representation of R.D.*

"37.    On August 22, 2012, on behalf of R.D., the respondent filed suit against Premium Nutritional Products, Inc., in Johnson County District Court. The respondent sought a restraining order, a temporary injunction, a permanent injunction, and declaratory relief for R.D.

"38.    Premium Nutritional Products, Inc., filed counterclaims against R.D. The respondent failed to answer the counterclaims.

"39.    The respondent failed to comply with discovery. The respondent failed to respond to many attempts to resolve scheduling and discovery disputes. The respondent failed to meet deadlines in the case.

"40.    As a result, counsel for Premium Nutritional Products, Inc., filed a motion to compel. The court scheduled a hearing on the motion to compel for August 26, 2013. The respondent failed to appear at the scheduled hearing.

10

"41.     Because the respondent failed to appear at the scheduled hearing, the court dismissed R.D.'s action and granted judgment to Premium Nutritional Products, Inc. on its counterclaim against R.D. Additionally, the court scheduled a hearing to determine the monetary damages caused by the respondent and his client.

"42.     On October 1, 2013, the respondent signed an affidavit. The affidavit provided:

'1.     I am Rodney Murrow, and I was Plaintiff [R.D.]'s counsel in the above captioned matter until October 1, 2013. On October 1, 2013 [R.D.] terminated me as his attorney.

'2.     On or about June 28, 2013, [R.D.] notified me that he received a copy of [*sic*] letter from Defendant's counsel in which Defendant's counsel claimed I had failed to respond to several discovery matters, a proposed Journal Entry, settlement communications and [R.D.]'s deposition noticed for July 2, 2013.

'3.     I told [R.D.] that the matters at issue in the letter were being and would be handled.

'4.     I did not inform [R.D.] that Defendant had filed a Motion to Compel and was seeking to dismiss his case, and a default judgment in Defendant's favor. I did not inform [R.D.] that a hearing was scheduled on the Motion to Compel.

'5.     I did not inform [R.D.] that I failed to attend the hearing on the Motion to Compel.

'6.     I did not inform [R.D.] that the Journal Entry of Judgment had been entered against him.

11

'7.     [R.D.] attempted to contact me about these matters on or about September 17, 2013, after he was served with the Journal Entry of Judgment.

'8.     On or about September 20, 2013, I responded to [R.D.]. I told him that I was aware of the situation and I was taking steps to rectify it.

'9.     I asked to meet with [R.D.] on September 25, 2013. At that time I told [R.D.] that I could no longer represent him because my conduct was at issue with respect to the Court entering the Journal Entry of Judgment.'

"43.     R.D. retained Phillip Greenfield to represent him in the case. Mr. Greenfield filed a motion to set aside the judgment. The respondent never filed a motion to or a notice of withdraw.

"44.     On November 26, 2013, the court awarded attorney fees in favor of Premium Nutritional Products, Inc. and against the respondent and R.D.

"*Conclusions of Law*

"45.     Based upon the respondent's stipulation and the above findings of fact, the hearing panel concludes as a matter of law that the respondent violated KRPC 1.1, KRPC 1.3, KRPC 1.4, KRPC 1.16(a)(2), KRPC 1.16(d), KRPC 3.2, and KRPC 3.4(d), as detailed below.

"KRPC 1.1

"46.     Lawyers must provide competent representation to their clients. KRPC 1.1. 'Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.' The respondent failed to exercise the thoroughness and preparation necessary for the representation of J.B., K.B.,

12

J.M., and R.D. Accordingly, the hearing panel concludes that the respondent violated KRPC 1.1.

## "KRPC 1.3

"47.     Attorneys must act with reasonable diligence and promptness in representing their clients. *See* KRPC 1.3. The respondent failed to diligently and promptly represent J.B., K.B., J.M., and R.D. The respondent failed to appear at scheduled hearings, respond to discovery, file answers to counterclaims, and respond to motions. Finally, the respondent's lack of diligence caused all four of his clients actual injury. Because the respondent failed to act with reasonable diligence and promptness in representing his clients, the hearing panel concludes that the respondent violated KRPC 1.3.

## "KRPC 1.4

"48.     KRPC 1.4(a) provides that '[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.' In this case, the respondent violated KRPC 1.4(a) when he failed to keep J.B., K.B., J.M., and R.D. informed regarding the status of the representations. Accordingly, the hearing panel concludes that the respondent violated KRPC 1.4(a).

## "KRPC 1.16

"49.     An attorney whose 'physical or mental condition materially impairs the lawyer's ability to represent the client,' shall withdraw from the representation. KRPC 1.16(a)(2). In this case, the respondent's serious mental health condition impaired his ability to properly represent J.B., K.B., J.M., and R.D. The respondent failed to timely withdraw from the representations as required by KRPC 1.16(a)(2). Accordingly, the hearing panel concludes that the respondent violated KRPC 1.16(a)(2).

13

"50.    Additionally, KRPC 1.16 requires lawyers to take certain steps to protect clients after the representation has been terminated. Specifically, KRPC 1.16(d) provides the requirement in this regard:

'Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.'

The respondent failed to properly account for the $5,000 fee paid by J.B. and the $2,000 fee paid by K.B. Further, the respondent failed to relinquish K.B.'s file after many demands for the file. The hearing panel concludes that the respondent violated KRPC 1.16(d).

"KRPC 3.2

"51.    An attorney violates KRPC 3.2 if he fails to make reasonable efforts to expedite litigation consistent with the interests of his client. The respondent caused unnecessary delay in J.B.'s case, J.M.'s case, and R.D.'s case. Accordingly, the hearing panel concludes that the respondent violated KRPC 3.2.

"KRPC 3.4(d)

"52.    KRPC 3.4(d) provides that a lawyer shall not 'in pretrial procedure, make a frivolous discovery request or fail to make a reasonably diligent effort to comply with a legally proper discovery request by an opposing party.' In his representation of R.D., the respondent failed to respond to Premium Nutritional Products, Inc.'s reasonable requests for discovery. Thus, the hearing panel concludes that the respondent violated KRPC 3.4(d).

14

"53.    In making this recommendation for discipline, the hearing panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"54.    *Duty Violated*. The respondent violated his duty to his clients to provide competent and diligent representation and adequate communication. The respondent violated his duty to the legal system to comply with court orders.

"55.    *Mental State*. The respondent knowingly violated his duty.

"56.    *Injury*. As a result of the respondent's misconduct, the respondent caused actual injury to all four clients.

"Aggravating and Mitigating Factors

"57.    Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following aggravating factor present:

"58.    *A Pattern of Misconduct*. The respondent has engaged in a pattern of misconduct. In his representation of four separate clients, the respondent violated many of the same rules. The respondent's lack of diligence and communication was present in each of the cases.

"59.    *Multiple Offenses*. The respondent committed multiple rule violations. The respondent violated KRPC 1.1, KRPC 1.3, KRPC 1.4, KRPC 1.16(a)(2), KRPC

1.16(d), KRPC 3.2, and KRPC 3.4(d). Accordingly, the hearing panel concludes that the respondent committed multiple offenses.

"60. *Substantial Experience in the Practice of Law*. The Kansas Supreme Court admitted the respondent to practice law in the State of Kansas in 1990. At the time of the misconduct, the respondent had been practicing law for more than 20 years.

"61. *Indifference to Making Restitution*. The respondent has taken no considerable action to determine each client's loss which resulted from the respondent's misconduct. The respondent's cavalier attitude regarding righting the wrongs caused by his misconduct was disconcerting to the hearing panel. Further, the respondent's lack of empathy toward his clients negated any expression of remorse present in this case. Finally, the respondent testified that he borrowed $35,000 from a family trust in order to purchase the franchise. The hearing panel finds it telling that he failed to make similar arrangements to make restitution to his injured clients.

"62. Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following mitigating circumstances present:

"63. *Absence of a Prior Disciplinary Record*. The respondent has not previously been disciplined.

"64. *Absence of a Dishonest or Selfish Motive*. The respondent's misconduct does not appear to have been motivated by dishonesty or selfishness.

"65. *Personal or Emotional Problems if Such Misfortunes Have Contributed to Violation of the Kansas Rules of Professional Conduct*. The respondent suffers from depression. It is clear that the respondent's depression directly contributed to his misconduct in this case. The respondent's depression, however, does not appear to have abated sufficiently to render the respondent currently fit to practice law.

16

"66.     *The Present and Past Attitude of the Attorney as Shown by His or Her Cooperation During the Hearing and His or Her Full and Free Acknowledgment of the Transgressions.* The respondent fully cooperated with the disciplinary process. Additionally, the respondent admitted the facts and the rule violations alleged in the formal complaint.

"67.     *Previous Good Character and Reputation in the Community Including Any Letters from Clients, Friends, and Lawyers in Support of the Character and General Reputation of the Attorney.* The respondent has been an active and productive member of the bar of Johnson County, Kansas. The respondent appears to enjoy the respect of his friends and peers and generally possesses a good character and reputation as evidenced by letters received by the hearing panel.

"68.     In addition to the above-cited factors, the hearing panel has thoroughly examined and considered the following Standards:

'4.42     Suspension is generally appropriate when:

(a)     a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or

(b)     a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.

'6.22     Suspension is appropriate when a lawyer knowingly violates a court order or rule, and there is injury or potential injury to a client or a party, or interference or potential interference with a legal proceeding.'

"69.     The disciplinary administrator recommended that the respondent be indefinitely suspended from the practice of law. The respondent recommended his plan of probation be granted and that he be allowed to continue to have a license to practice law. The respondent, however, has no plans to engage in the active practice of law. Alternatively, the respondent argued that censure would be appropriate discipline in this case.

"70.     Probation is designed for attorneys who have engaged in conduct warranting suspension but who have shown that they have resolved their difficulties and deserve a chance to continue to practice law. While the respondent's misconduct warrants suspension, the other circumstances are not present. In this case, the respondent has no plans to practice law. Additionally, the respondent's difficulties have not been resolved. His physician has indicated that he needs to withdraw from the practice of law.

"71.     Moreover, in order for a hearing panel to recommend that a respondent be placed on probation, the hearing panel must find:

'(i)      the Respondent develops a workable, substantial, and detailed plan of probation and provides a copy of the proposed plan of probation to the Disciplinary Administrator and each member of the Hearing Panel at least 14 days prior to the hearing on the Formal Complaint;

'(ii)     the Respondent puts the proposed plan of probation into effect prior to the hearing on the Formal Complaint by complying with each of the terms and conditions of the probation plan;

'(iii)    the misconduct can be corrected by probation; and

'(iv)   placing the Respondent on probation is in the best interests of the legal profession and the citizens of the State of Kansas. Kan. Sup. Ct. R. 211(g)(3).'

"72.   The respondent failed to provide a workable, substantial, and detailed plan of probation. Despite the requirements of Kan. Sup. Ct. R. 211(g)(3), the respondent argued that his plan could be tweaked and he was open to any changes to the plan. However, that is not how probation in Kansas works. The plan must be workable, substantial, and detailed, and put into place prior to the hearing on the formal complaint. The respondent also failed to put the plan into effect prior to the hearing on the formal complaint. And, finally, placing the respondent on probation is not in the best interests of the legal profession and the citizens of the State of Kansas. The respondent stated that he wants to keep his law license for the business benefit it will provide him in connection with his planned employment agency franchise. The hearing panel concludes that the respondent's request for probation must be denied.

"73.   The question then become whether censure or suspension is appropriate discipline to impose in this case. The respondent engaged in serious, continuous misconduct over a period of time. Four clients suffered actual injury as a result of the respondent's misconduct. Finally, according to the respondent's physician, for the time being, the respondent is not able to engage in the practice of law.

"74.   On the record in the February 19, 2013, hearing, Judge Vano concisely summed up this case:

'The Professional Rules of Conduct, however, don't allow for just letting a case ride along and letting it go at [the] client's peril. . . .

'. . . And he may, in fact, have an illness, but he also has a responsibility to his client.'

"75.   Accordingly, based upon the findings of fact, conclusions of law, and the Standards listed above, the hearing panel unanimously recommends that the respondent

19

be suspended for a period of 1 year. The hearing panel further recommends that prior to reinstatement, the respondent be required to undergo a hearing pursuant to Kan. Sup. Ct. R. 219. Finally, the hearing panel recommends that before the respondent is permitted to return to the practice of law, the respondent provide full restitution of all attorney fees paid to each of the four injured clients as well as restitution to R.D. for any attorney's fee awarded as a sanction.

"76.    Costs are assessed against the respondent in an amount to be certified by the Office of the Disciplinary Administrator."

## DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the findings of the disciplinary panel, and the arguments of the parties and determines whether violations of KRPC exist and, if they do, what discipline should be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Foster*, 292 Kan. 940, 945, 258 P.3d 375 (2011); see Supreme Court Rule 211(f) (2013 Kan. Ct. R. Annot. 356). Clear and convincing evidence is "'evidence that causes the factfinder to believe that "the truth of the facts asserted is highly probable."'" *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 (2009) (quoting *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 [2008]).

Respondent was given adequate notice of the formal complaint, to which he filed an answer, and adequate notice of the hearing before the panel and the hearing before this court. The respondent filed no exceptions to the hearing panel's final hearing report. As such, the findings of fact are deemed admitted. Supreme Court Rule 212(c) and (d) (2013 Kan. Ct. R. Annot. 375).

The evidence before the hearing panel establishes by clear and convincing evidence the charged misconduct violated KRPC 1.1 (2013 Kan. Ct. R. Annot. 446)

20

(competence); 1.3 (2013 Kan. Ct. R. Annot. 464) (diligence); 1.4(a) (2013 Kan. Ct. R. Annot. 484) (communication); 1.16(a)(2) and (d) (2013 Kan. Ct. R. Annot. 569) (termination of representation); 3.2 (2013 Kan. Ct. R. Annot. 587) (expediting litigation); and 3.4(d) (2013 Kan. Ct. R. Annot. 601) (failure to respond to discovery request), and it supports the panel's conclusions of law. We, therefore, adopt the panel's conclusions.

In light of the multiple instances of misconduct and rule violations, the office of the Disciplinary Administrator recommended to this court that the respondent be suspended for an indefinite period of time. The respondent suggested we should censure him or place him on probation.

We conclude that censure is not appropriate in this case given the repeated nature of respondent's conduct and the resulting actual injury to his clients. Further, we agree with the hearing panel that probation is not appropriate for several reasons, including respondent's failure to present a workable, substantial, and detailed plan that was put into place prior to the hearing on the formal complaint. The hearing panel, after rejecting probation as a viable alternative, recommended that the respondent be suspended for a period of 1 year and that prior to reinstatement, the respondent undergo a reinstatement hearing, under Supreme Court Rule 219 (2013 Kan. Ct. R. Annot. 407), and provide full restitution of all attorney fees paid to each of the four injured clients as well as restitution to R.D. for any attorney fees he had paid pursuant to the district court's award in favor of Premium Nutritional Products, Inc.

This recommendation is "advisory only and shall not prevent the Court from imposing sanctions greater or lesser than those recommended." Supreme Court Rule 212(f) (2013 Kan. Ct. R. Annot. 377). In this case, we conclude the hearing panel's recommendation is appropriate.

21

CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that Rodney K. Murrow be suspended for 1 year from the practice of law in the state of Kansas effective on the filing of this opinion in accordance with Supreme Court Rule 203(a)(2) (2013 Kan. Ct. R. Annot. 300).

IT IS FURTHER ORDERED that the respondent shall comply with Supreme Court Rule 218 (2013 Kan. Ct. R. Annot. 406) and Rule 219. At any reinstatement hearing conducted under Rule 219, respondent is required to present clear and convincing evidence that:

(1) He has made restitution to his four injured clients in amounts determined appropriate by the hearing panel or has reimbursed the Lawyers' Fund for Client Protection for all amounts it has paid for claims filed by his clients.

(2) He has received adequate health treatment, including psychological treatment, and has been medically and psychologically evaluated and determined fit to engage in the active practice of law.

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to the respondent and that this opinion be published in the official Kansas Reports.

MICHAEL J. MALONE, Senior Judge, assigned.[1]

---

[1] **REPORTER'S NOTE:** Senior Judge Malone was appointed to hear case No. 111,424 to fill the vacancy on the court created by the appointment of Justice Nancy Moritz to the United States 10th Circuit Court of Appeals.