# IN THE SUPREME COURT OF IOWA

No. 15–0673

Filed October 30, 2015

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Appellee,

vs.

**HEATHER MARIE KINGERY,**

Appellant.

Appeal from the report of the Grievance Commission of the Supreme Court of Iowa.

An attorney contends the grievance commission's recommended sanction for violations of disciplinary rules is excessive and features improper auxiliary conditions on reinstatement. **LICENSE SUSPENDED.**

David L. Brown of Hansen, McClintock & Riley, Des Moines, for appellant.

Charles L. Harrington and Elizabeth E. Quinlan, Des Moines, for appellee.

**HECHT, Justice.**

The Iowa Supreme Court Attorney Disciplinary Board (the Board) charged attorney Heather Marie Kingery with violating multiple rules of professional conduct after the Board received four separate complaints. After a hearing, the Iowa Supreme Court Grievance Commission (the commission) found Kingery committed the alleged violations and recommended suspension of her license for six months and several conditions upon any future reinstatement. Kingery appeals, contending the sanction and conditions recommended by the commission are excessive. On our de novo review, we agree Kingery's conduct merits a suspension, but impose a shorter one with fewer conditions.

## I. Background Facts.

Kingery received a bipolar disorder diagnosis while she was in law school. Since then she has consistently taken prescribed medications to manage the disorder. Kingery has also struggled with alcoholism and committed two misdemeanor criminal offenses involving alcohol, one in 1994 and one in 2007.

Kingery was admitted to practice law in Iowa in 2010 and initially practiced with a law firm in northeast Iowa. After approximately one year with the firm, Kingery opened her own practice in Decorah. A majority of Kingery's cases in her solo practice were criminal defense matters, including court appointments in Winneshiek County and adjacent Howard County. In addition to criminal cases, Kingery also handled a few civil matters.

Kingery was married in September 2013. Her husband lived in Europe and was not a United States citizen at the time of the marriage. The couple retained an immigration attorney to work toward securing his legal immigration to the United States. Kingery testified at the hearing

before the commission in this case that the immigration issue caused her significant stress leading up to and immediately following the marriage. Kingery also testified the immigration issue has not been resolved in the two years since the marriage, and as a result, she and her husband communicate almost exclusively by telephone and through webcam videoconferencing.

While coping with the stress of the immigration issue and the bipolar disorder, Kingery drank alcohol heavily and frequently in October 2013. Her life very quickly spun out of control, and by December her daily routine consisted only of buying alcohol, drinking alcohol, and sleeping. She did not open her mail, and she stopped responding to all communication from clients, opposing attorneys, court staff and judges, and the Board.

In January 2014, Kingery sought medical assistance for detoxification. She received inpatient alcohol treatment in Waterloo and outpatient treatment in Decorah. In August 2014, Kingery moved to West Des Moines so that she could be closer to a more robust support system and live in a bigger market for legal employment. She attends weekly support group meetings and has become an active church congregant there. She has also received helpful assistance from the Iowa Lawyers Assistance Program (ILAP). She has not consumed alcohol in over a year and has not practiced law since fall 2013. She currently holds a part-time job in retail customer service, but she hopes to resume practicing criminal law in the near future as an assistant county attorney, a private criminal defense attorney, or a public defender.

## II. Events Giving Rise to the Board's Complaint.

**A. James Steenhard Matter.** Kingery was court appointed to represent James Steenhard in a criminal appeal. She filed a combined

certificate and ordered a transcript, but she never filed a proof brief or a designation of appendix. On July 30, 2013, the clerk of the Iowa Supreme Court entered a notice of default notifying Kingery she was obligated to file those documents within fifteen days. *See* Iowa R. App. P. 6.1202(1)(*a*). Kingery did not respond to the notice or cure the default. Rather than dismissing the appeal, on September 24—almost two months after the default notice—this court removed Kingery as counsel, directed the district court to appoint new counsel, and referred Kingery to the Board.

**B. Christine Kelly Matter.** Christine Kelly hired Kingery in 2011 to represent her in enforcing provisions of Kelly's marriage dissolution decree. Kingery filed an application for rule to show cause on Kelly's behalf. The matter was delayed, however, when the court granted an indefinite continuance in July 2012.

In early May 2013, Kingery met with Kelly to discuss and draft responses to discovery requests opposing counsel had served. On May 20, Kelly requested a copy of the discovery responses and reciprocal discovery requests prepared for service on the opposing party. Kingery did not respond to Kelly's request until May 29, but she apologized for the delay and assured Kelly her case was still a priority.

On June 26, Kelly requested an update on the status of the discovery process. Kingery did not respond, so Kelly sent another inquiry on July 8. That same day Kingery informed Kelly she had prepared and mailed the discovery requests. However, after that she did not communicate with Kelly despite repeated emails and phone calls from Kelly. For example, on August 8, Kelly emailed Kingery noting that the time for her adversary's discovery responses had passed and asking for copies of any discovery responses Kingery had received. Kingery did

not respond. On August 16, Kelly sent Kingery an email requesting a case status update and expressly citing the rule setting forth Kingery's obligation to keep Kelly informed about the status of the matter, but Kingery again did not respond. *See* Iowa R. Prof'l Conduct 32:1.4(a)(3).

On September 3, Kelly sent Kingery a letter terminating the attorney–client relationship and requesting Kingery return all paperwork and case files. Kingery did not respond to the letter. Kelly sent an email requesting the case file on September 10. Again, Kingery did not respond. On September 20, Kelly sent Kingery an email proposing to meet at the Winneshiek County Courthouse to exchange payment and documents. After Kingery did not respond to this email, Kelly filed a complaint with the Board.

In February 2014, Kelly filed a small claims action against Kingery seeking the return of her file plus $1500 in damages. Kingery filed an answer and counterclaim seeking $800 in allegedly unpaid attorney fees and costs associated with copying Kelly's file. After hearing the case, the court awarded damages to each party and, offsetting the amounts, ultimately awarded Kingery $38.40. Kelly paid the amount and received her file.

**C. Court Appointed Criminal Defense Matters.** Kingery was court appointed to represent a number of criminal defendants in Winneshiek County. On July 16, 2013, the district court granted continuances to three of Kingery's clients—Lee Holkesvik, Karlie Marlow, and Scott Swehla—when they appeared for arraignment or other proceedings but Kingery did not. Another client, Justin Borseth, requested new counsel after Kingery failed to appear as scheduled for a hearing on July 30. The court granted Borseth's request.

Kingery was also court appointed to represent Dante DeGrazia. In fall 2013, Kingery twice failed to appear for DeGrazia's arraignment, although DeGrazia personally appeared both times. On the second of these occasions, DeGrazia reported he had been unable to contact Kingery. On its own motion, the court removed Kingery from the case and appointed replacement counsel. That same day, it removed Kingery as counsel for Abbey Lowe in a separate criminal case for the same reason—Kingery had failed to appear in court as scheduled and had not communicated with the court or her client.

On October 31, another of Kingery's clients, James Thorne, filed a request for new counsel with the district court. Thorne's request for new counsel stated Kingery "does not answer or return my phone calls" and also alleged she had missed a scheduled appointment with Thorne that day. A magistrate granted Thorne's request, removed Kingery from representing Thorne, and appointed replacement counsel. The magistrate found removal was "necessary to secure defendant's rights."

Unfortunately, for two of Kingery's clients—Scott Geary and Dylan Carlson—receiving newly appointed counsel was not the only consequence of Kingery's missed appearances and proceedings. In late July 2013, Kingery requested and received a continuance of proceedings in Geary's case until August 6. The order granting the continuance stated Geary was required to appear personally on August 6. Kingery and Geary both failed to appear on August 6. The court issued a warrant for Geary's arrest, and he was arrested and jailed. The court later released Geary on bond, in part because Geary wrote a letter from his jail cell asking for a new lawyer and explaining both he and the jail staff had tried unsuccessfully to reach Kingery.

Similarly, Carlson sent a handwritten pleading from his jail cell to the district court after he was arrested for failing to appear. He asked the district court to consider contacting him personally to discuss payment options for court fees owed, and he explained he did not appear in court because Kingery did not respond to his phone calls inquiring about the scheduled time for hearing. Kingery does not dispute that both Geary and Carlson served time in jail because she did not apprise them of the need to appear personally in court.

Local prosecutors and judges noted Kingery's absence from the courthouse as it stretched over several months. By mid-December, Kingery had not retrieved any notices from the clerk's office for over a month. The chief judge of the First Judicial District suspended Kingery from receiving any further court appointments and the Office of the State Public Defender terminated Kingery's indigent defense contract. The Winneshiek County Attorney sent a letter to the Board regarding Kingery's serial failures to appear for hearings and court proceedings, believing he was ethically obligated to report the information. A district court judge within the First Judicial District also notified the Board of Kingery's neglect of clients' matters.

**D. Brookview Farms Matter.** Doug Corson, the president of Brookview Farms LLC, hired Kingery in February 2013 to draft a conveyance granting to Corson and his two children a life estate in land the LLC owned. In an email to Kingery, Corson explained he wanted the deed "to be an iron-clad document that cannot be legally contested." Kingery did not complete the work for several months, mentioning health issues had affected her productivity. Corson accepted the delay at first, but by August he was growing impatient.

On September 5, Kingery apologized for her lack of contact and scheduled a meeting with Corson for the following day. At the meeting, Kingery presented the deed she had drafted and a bill for $347, and Corson paid her. Corson was concerned the deed did not accurately describe the real estate and did not adequately convey a life estate, but Kingery assured Corson it did. Based on Kingery's assurances, Corson signed the deed but instructed Kingery not to record it until he ensured Kingery had drafted it correctly. Accordingly, Kingery did not record the deed, although she did cash Corson's check.

Corson determined the deed's legal description of the property was incomplete and therefore incorrect. He asked Kingery to correct the errors and Kingery agreed to do so. However, Kingery stopped responding to Corson's communications. On January 8, 2014, Corson sent an email demanding a meeting with Kingery. Kingery did not respond. On March 9, Corson sent an email terminating the attorney–client relationship. He also filed a complaint with the Board.

### III. Disciplinary Proceedings.

In November 2013, the Board sent Kingery an inquiry about the Steenhard appeal and requested a response. After several weeks passed with no response, the Board filed a certificate on December 5 advising the court that Kingery had failed to respond and requesting a temporary suspension of Kingery's license if she did not respond within twenty days. *See* Iowa Ct. R. 34.7(3). Kingery did not respond within twenty days. Accordingly, on January 16, 2014, this court temporarily suspended Kingery's license. The Board repeated that process after sending inquiries to Kingery about her conduct in the Kelly and Brookview Farms matters, and in the several criminal cases mentioned

above. Each time the Board sent inquiries, Kingery did not respond, and we issued a temporary suspension.[1]

Eventually, the Board filed a four-count complaint alleging Kingery violated numerous provisions of the Iowa Rules of Professional Conduct in her representation of Steenhard, Kelly, Brookview Farms, and the criminal defendants: neglect (rule 32:1.3); failure to keep a client informed about the status of their matter (rule 32:1.4(a)(3)); failure to comply promptly with reasonable requests for information (rule 32:1.4(a)(4)); charging an unreasonable amount for expenses (rule 32:1.5(a)); failure to deliver property the client is entitled to receive (rule 32:1.15(d)); failure to withdraw from representation when required (rule 32:1.16(a)(2)); failure to expedite litigation (rule 32:3.2); knowingly making a false statement of fact or law to a tribunal (rule 32:3.3(a)(1)); knowingly making a false statement of fact or law to a third person (rule 32:4.1(a)); engaging in dishonesty, fraud, deceit, or misrepresentation (rule 32:8.4(c)); and engaging in conduct prejudicial to the administration of justice (rule 32:8.4(d)).

The Board later withdrew its allegations that Kingery violated rules 32:3.3(a)(1) and 32:8.4(c) by making dishonest or false statements. It also withdrew the allegation that Kingery failed to deliver property a client was entitled to receive, in violation of rule 32:1.15(d). The withdrawals left eight alleged ethical violations for disposition. Kingery filed an answer admitting she committed rule violations in representing Steenhard, Brookview Farms, and the criminal defendants. She denied committing rule violations in representing Kelly.

---

[1]We lifted the multiple concurrent suspensions in April 2015 after Kingery retained counsel and answered the Board's formal complaint. *See* Iowa Ct. R. 34.7(3)(*d*).

The commission held a hearing on March 13, 2015. Kingery testified, explaining the circumstances of her bipolar disorder and alcoholism and describing the steps she has taken since 2013 to develop a support system and prevent relapse. She expressed remorse and regret, and she took responsibility for "some horrible mistakes." Kingery further noted her humbling experience the last few years has caused her to "see things differently now."

The commission concluded Kingery committed neglect by delaying the Brookview Farms matter, failed to keep Corson apprised of the status of the Brookview Farms matter, and both failed to expedite litigation and engaged in conduct prejudicial to the administration of justice in the Steenhard appeal and the appointed criminal defense matters. It also concluded Kingery failed to comply promptly with a reasonable request for information from both Kelly and Corson. Most importantly, however, the commission found Kingery failed to withdraw from each of her cases when her alcoholism began materially impairing her ability to represent her clients.[2]

The commission found Kingery's lack of disciplinary history, alcoholism, and bipolar disorder to be significant mitigating factors. It also commended her for taking full responsibility and expressing remorse. The commission recommended an indefinite suspension of Kingery's license for no less than six months with several conditions on any future reinstatement. In particular, the commission recommended Kingery be required to (1) offer documentation from medical providers showing her fitness to practice law at the time of reinstatement,

---

[2]Although the Board's complaint alleged Kingery violated rule 32:1.5(a) by attempting to charge Kelly an unreasonable amount for expenses and violated rule 32:4.1(a) by making false statements to a third person, the Board presented no evidence as to those alleged violations, and the commission made no findings on them.

(2) continue to undergo and comply with mental health and substance abuse treatment and counseling, (3) update the Board continually for one year with medical records proving compliance, (4) maintain sobriety, (5) associate with another licensed attorney and not practice on her own, and (6) cooperate with the ILAP.

Kingery appeals contending the sanction recommended by the commission is unwarranted. She contends a six-month suspension is excessive and asserts a public reprimand is a more appropriate sanction because her violations were all rooted in a single continuous episode of neglect. Further, she contends the attorney supervision requirement and the requirement that she provide medical documentation for one year after reinstatement are inappropriate under the circumstances. The Board asserts a suspension is necessary because Kingery's clients suffered harm and suggests the suspension should last at least three months. However, it concedes the attorney supervision and postreinstatement documentation requirements recommended by the commission are inappropriate.

### IV. Scope of Review.

We review appeals from the grievance commission de novo. Iowa Ct. R. 35.12(4). The Board must prove each rule violation by a convincing preponderance of the evidence—a standard higher than in most civil cases but lower than the criminal burden of proof beyond a reasonable doubt. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Hedgecoth*, 862 N.W.2d 354, 360 (Iowa 2015); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Wengert*, 790 N.W.2d 94, 97–98 (Iowa 2010).

### V. Rule Violations.

Kingery stipulated that she committed certain ethical violations in her representation of Steenhard, Brookview Farms (Corson), and the

criminal defendants. However, "[a]n attorney's stipulation as to a violation is not binding on us." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kelsen*, 855 N.W.2d 175, 181 (Iowa 2014); *accord Iowa Supreme Ct. Att'y Disciplinary Bd. v. Bartley*, 860 N.W.2d 331, 335 (Iowa 2015); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Gailey*, 790 N.W.2d 801, 804 (Iowa 2010) ("Nowhere in our rules have we given the parties the authority to determine what conduct constitutes a violation . . . ."). "If a stipulation concedes a rule violation, we will only find a violation if the facts are sufficient to support the stipulated violation." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Wright*, 857 N.W.2d 510, 514 (Iowa 2014). Thus, we "address in turn each rule violation alleged by the Board in determining whether the Board carried its burden of proof." *Hedgecoth*, 862 N.W.2d at 360.

**A. Neglect.** "A lawyer shall act with reasonable diligence and promptness in representing a client." Iowa R. Prof'l Conduct 32:1.3. Although the word "neglect" does not appear in rule 32:1.3, cases sanctioning neglect under a predecessor to the rules are relevant to our analysis here. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Van Ginkel*, 809 N.W.2d 96, 102 (Iowa 2012).

"Neglect involves an attorney's consistent failure to perform his or her obligations . . . ." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Conroy*, 845 N.W.2d 59, 63 (Iowa 2014). An attorney violates rule 32:1.3 when he or she "fails to appear at scheduled court proceedings, does not make the proper filings, or is slow to act on matters." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Nelson*, 838 N.W.2d 528, 537 (Iowa 2013). An attorney who ignores appellate deadlines, does not cure default notices, and fails to file required documents violates rule 32:1.3. *See, e.g., Hedgecoth*, 862 N.W.2d at 357–58, 361; *Wengert*, 790 N.W.2d at 101;

*Iowa Supreme Ct. Att'y Disciplinary Bd. v. Adams*, 749 N.W.2d 666, 669 (Iowa 2008). We have also concluded an attorney violated rule 32:1.3 when he "failed to appear at a pretrial conference and a hearing." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. McCarthy*, 814 N.W.2d 596, 606 (Iowa 2012); *see also Nelson*, 838 N.W.2d at 537 (finding an attorney violated rule 32:1.3 when he "did not attend three pretrial hearings"); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Hauser*, 782 N.W.2d 147, 150, 152 (Iowa 2010) (finding an attorney committed neglect when he failed to appear for his client's civil trial); *Adams*, 749 N.W.2d at 669 (finding an attorney violated rule 32:1.3 when he failed to appear at his client's arraignment).

In this case, Kingery engaged in the same type of neglectful conduct. In the Steenhard appeal, she did not file required documents on time and subsequently ignored a default notice. The clerk of court did not dismiss Steenhard's appeal, but "only because this court intervened and ordered [Kingery] removed." *Conroy*, 845 N.W.2d at 65. Although she missed deadlines in just one appeal, the missed deadlines were part of a larger "pattern of rule violations" affecting multiple clients. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Eslick*, 859 N.W.2d 198, 203 (Iowa 2015); *cf. Iowa Supreme Ct. Att'y Disciplinary Bd. v. Boles*, 808 N.W.2d 431, 442 (Iowa 2012) (noting an attorney's ethical shortcomings "were not isolated" and caused "extensive problems" with multiple clients). This pattern is patently clear because Kingery repeatedly failed to appear for court proceedings in her court-appointed criminal cases, affecting at least eight clients. We find Kingery violated rule 32:1.3.

**B. Attorney–Client Communication.** "A lawyer shall . . . keep the client reasonably informed about the status of the matter." Iowa R. Prof'l Conduct 32:1.4(a)(3). Further, a lawyer must "promptly comply

with reasonable requests for information." *Id.* r. 32:1.4(a)(4). Compliance with requests for information includes responding to or at least acknowledging a client's attempts to communicate. *Id.* cmt. [4]. These two rules are interrelated because "regular communication with clients will minimize the occasions on which a client will need to request information concerning the representation." *Id.*

"[W]hen an attorney neglects to keep a client informed about the status of the case or does not respond to a client's attempts to contact the attorney about the case," the attorney violates rule 32:1.4. *Nelson,* 838 N.W.2d at 537. In *Nelson,* we concluded an attorney violated this rule when he "neither initiated nor returned client phone calls, despite requests by clients that he do so." *Id.* We have also found an attorney violated both subsection (a)(3) and subsection (a)(4) when she "did not attempt to inform her client about the status of the client's case . . . and failed to respond to the client's multiple phone calls and visits." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Ryan,* 863 N.W.2d 20, 26 (Iowa 2015); *see also McCarthy,* 814 N.W.2d at 606 (finding a violation when the attorney's "failure to answer his telephone and respond to telephone and e-mail messages" caused "[n]early all of [his] clients" to have difficulty contacting him); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Cunningham,* 812 N.W.2d 541, 547 (Iowa 2012) (finding a violation when an attorney did not inform a client the court had ordered sanctions and did not respond to the client's attempts to contact him); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Johnson,* 792 N.W.2d 674, 678 (Iowa 2010) (concluding the attorney's "failure to respond to [the client]'s phone calls and requests for information" constituted a violation of rule 32:1.4).

Here, we find Kingery failed to update Kelly about the status of discovery in her dissolution matter in response to the client's multiple

inquiries requesting information. Similarly, Corson sent Kingery multiple inquiries about his real estate matter before receiving a response. In both the Kelly and Corson matters, Kingery eventually stopped responding to emails and phone calls altogether. Finally, in the several criminal defense matters discussed above, multiple clients reported to the court that they had been unable to contact Kingery and that she would not answer or return their calls. We find Kingery violated rule 32:1.4(a)(3) and (4) in each of these instances.

**C. Unreasonable Expenses.** "A lawyer may seek reimbursement for the cost of services performed in-house, such as copying . . . ." Iowa R. Prof'l Conduct 32:1.5 cmt. [1]. However, the amount the lawyer seeks must be reasonable. *See id.* r. 32:1.5(a) ("A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses . . . ."). If it is not, the attorney is subject to discipline. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Baldwin*, 857 N.W.2d 195, 215 (Iowa 2014) (noting an attorney had previously been admonished for "charging his client an excessive fee to copy his file").

When Kelly sued Kingery in small claims court to obtain her file, Kingery counterclaimed for damages that included allegedly unpaid hourly fees and $500 for costs to reproduce the file. The Board's complaint alleged Kingery violated rule 32:1.5(a) by counterclaiming for $500 to copy Kelly's file. However, the Board's trial brief before the commission did not mention rule 32:1.5(a) at all, and the Board presented no evidence regarding that alleged violation. Thus, on our de novo review, we find the Board has failed to prove by a convincing preponderance of the evidence that Kingery violated rule 32:1.5(a).

**D. Mandatory Withdrawal.** Lawyers are required to withdraw from representing a client if "the lawyer's physical or mental condition

materially impairs the lawyer's ability to represent the client." Iowa R. Prof'l Conduct 32:1.16(a)(2). To find a violation, a convincing preponderance of the evidence must show (1) the attorney was suffering from a physical or mental condition, (2) the condition materially impaired the attorney's ability to represent clients, and (3) the attorney failed to withdraw. *See Cunningham*, 812 N.W.2d at 549.

"There is very little case law interpreting this rule or its predecessor" to guide our determination of what constitutes a violation. *Id.* at 548. In *Cunningham*, we found the Board had not proven a violation because the only evidence of the lawyer's physical or mental condition was a motion another attorney made that referred to general "health reasons." *See id.* at 548–49. Similarly, in *McCarthy*, we found an attorney who suffered a heart attack and underwent open-heart surgery did not violate the rule because there was no indication the delay in legal proceedings attributable to his physical condition caused the client any material disadvantage. *McCarthy*, 814 N.W.2d at 608–09. On the other hand, we have found an attorney violated this rule when he neglected multiple appeals—causing them to be dismissed for lack of prosecution— while undergoing and recovering from three serious, but nonemergency, back surgeries. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Hoglan*, 781 N.W.2d 279, 283–84 (Iowa 2010) (per curiam).

Our professional conduct rule requiring withdrawal in certain circumstances is materially identical to rules in place in Kansas and Maryland. *Compare* Iowa R. Prof'l Conduct 32:1.16(a)(2), *with* Kan. R. Prof'l Conduct 1.16(a)(2), *and* Md. Lawyers' R. Prof'l Conduct 1.16(a)(2). The Kansas Supreme Court concluded an attorney with severe depression violated the rule when he did not withdraw from representing multiple clients after having suicidal thoughts and taking medical leave

from his practice. *In re Murrow*, 336 P.3d 859, 861, 866, 869 (Kan. 2014) (per curiam). Similarly, Maryland's highest court adopted a disciplinary hearing judge's finding that an attorney violated the rule when he was so dependent on narcotics and tranquilizers that he "regularly did not show up in court when he was scheduled to appear on behalf of clients" and "ignored communications from judges as well as clients." *See Att'y Grievance Comm'n v. Patton*, 69 A.3d 11, 20 (Md. 2013). Several other courts have concluded an attorney battling substance abuse or mental health issues can violate similar rules if they do not withdraw when their physical or mental condition materially impairs their ability to represent clients. *See, e.g., In re Kelly*, 917 N.E.2d 658, 658–59 (Ind. 2009) (depression and substance abuse); *Disciplinary Counsel v. Wickerham*, 970 N.E.2d 932, 934–35 (Ohio 2012) (per curiam) (prescription drug addiction); *In re Roberts*, 725 S.E.2d 925, 925–26 (S.C. 2012) (per curiam) (depression and alcoholism); *In re Disciplinary Proceedings Against Cotten*, 650 N.W.2d 551, 555–57 (Wis. 2002) (per curiam) (depression).

Unlike *Cunningham,* here we have clear evidence—including medical records—tending to show Kingery suffers from bipolar disorder and alcoholism. *See Cunningham,* 812 N.W.2d at 548–49. Thus, because we have undisputed evidence of Kingery's health status and we know she did not withdraw from her cases during an extended period of professional dysfunction, we must decide whether rule 32:1.16(a)(2) required her to withdraw. The framework set forth in *McCarthy* and *Hoglan* instructs that, regardless whether the attorney's physical or mental condition was within his or her control, we should evaluate what actually happened in determining if Kingery's ability to represent her clients was materially impaired. *See McCarthy*, 814 N.W.2d at 608–09;

*Hoglan*, 781 N.W.2d at 283–84. Kingery's own description of her dysfunction, the resulting delays in court proceedings, and the total absence of contact with clients over an extended period leads us to find by a convincing preponderance of the evidence that it was. *See Patton*, 69 A.3d at 20. Thus, we conclude Kingery violated rule 32:1.16(a)(2).

**E.  Failing to Expedite Litigation.**  "Dilatory practices bring the administration of justice into disrepute." Iowa R. Prof'l Conduct 32:3.2 cmt. [1]. Accordingly, the rules of professional conduct discourage dilatory practices and require lawyers to "make reasonable efforts to expedite litigation consistent with the interests of the client." *Id.* r. 32:3.2.

"An attorney violates this rule by failing to appear for status conferences and respond to court inquiries." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kieffer-Garrison*, 847 N.W.2d 489, 492 (Iowa 2014). We have also found a violation when an attorney "failed to follow court rules governing timely presentation and progression of appeals." *Hedgecoth*, 862 N.W.2d at 362. In this case, Kingery repeatedly failed to appear for status conferences, arraignments, and other court proceedings, causing multiple delays and continuances. Similarly, she did not file required appellate documents and caused the clerk to issue a default notice in the Steenhard matter. We conclude Kingery violated rule 32:3.2.

**F.  Duty to Avoid Making False Statements.**  Our ethical rules prohibit lawyers from knowingly making "a false statement of material fact or law to a third person." Iowa R. Prof'l Conduct 32:4.1(a). The Board charged Kingery with violating this rule. However, the Board presented no evidence to the commission supporting the charge, and the Board's appellate brief does not mention it. Further, the Board withdrew

both of the other claimed rule violations based upon allegedly false statements. We find no violation of rule 32:4.1(a) on this record.

**G. Conduct Prejudicial to the Administration of Justice.** Rule 32:8.4(d) prohibits "conduct that is prejudicial to the administration of justice." *Id.* r. 32:8.4(d). "[T]here is no typical form of conduct" that violates this rule. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Steffes*, 588 N.W.2d 121, 123 (Iowa 1999). Instead, the dispositive inquiry is whether "the attorney's act[s] hampered the efficient and proper operation of the courts or of ancillary systems upon which the courts rely." *Id.*

We have concluded an attorney hampered the courts' efficiency when he neglected multiple matters, causing delayed proceedings and "requir[ing] otherwise unnecessary administrative oversight by the clerk of court and judicial officers." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Lickiss*, 786 N.W.2d 860, 867 (Iowa 2010); *see also Iowa Supreme Ct. Att'y Disciplinary Bd. v. Rhinehart*, 827 N.W.2d 169, 180 (Iowa 2013) ("[A]n attorney . . . violates rule 32:8.4(d) when his [or her] misconduct results in additional court proceedings or causes court proceedings to be delayed or dismissed."). Similarly, an attorney hampers proper court operations by "[i]gnoring deadlines and orders, which results in default notices from the clerk of court." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Knopf*, 793 N.W.2d 525, 530 (Iowa 2011); *see also Hedgecoth*, 862 N.W.2d at 363. We think it evident that repeated delays and missed appearances impede court efficiency because the delays cause protraction in even the simplest of legal matters. Accordingly, because the evidence establishes by a convincing preponderance that Kingery's neglect of her criminal matters caused numerous delays in the judicial process, we conclude she violated rule 32:8.4(d).

**VI. Sanction.**

We now turn to the principal source of the parties' disagreement in this case: the appropriate sanction. Kingery asserts she deserves no more than a public reprimand due to mitigating factors, while the Board contends a suspension is necessary.

**A.  General Principles.**  When we review attorney disciplinary matters, the commission's recommended sanction does not bind us, although we give it respectful consideration. *Baldwin*, 857 N.W.2d at 213; *see* Iowa Ct. R. 35.11(1).  To arrive at an appropriate sanction,

> we consider the nature of the violations, the need for deterrence, the need to protect the public, the need to preserve the legal profession's reputation, and the lawyer's fitness to practice law.  We also consider mitigating and aggravating circumstances, including companion violations, repeated neglect, and the attorney's disciplinary history.

*Conroy*, 845 N.W.2d at 66 (citation omitted).  "When determining what sanctions to impose, we consider those imposed in similar cases while remaining aware of the different circumstances in each case."  *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Said*, 869 N.W.2d 185, 193 (Iowa 2015); *see also Eslick*, 859 N.W.2d at 202 ("[W]e evaluate each case individually but still consider prior cases instructive.").

**B.  Aggravating and Mitigating Circumstances.**  The record in this case reveals aggravating circumstances affecting our determination of the appropriate sanction.

Because of Kingery's failure to communicate with her criminal defense clients or appear for scheduled proceedings in those cases, the court issued arrest warrants for some of the clients and at least two of them spent time in jail for failure to appear.  Arrests and jail time certainly constitute harm, and harm to clients is an aggravating factor warranting more severe discipline. *Nelson*, 838 N.W.2d at 544 ("[A]t least

four clients . . . were arrested as a direct result of [the attorney's misconduct]."); *see also Iowa Supreme Ct. Att'y Disciplinary Bd. v. Clarity*, 838 N.W.2d 648, 662 (Iowa 2013) (noting the attorney's neglect caused three clients to be jailed); *Adams*, 749 N.W.2d at 669–70 (noting the attorney's conduct "resulted in the arrest and incarceration of the client"); *cf. Hedgecoth*, 862 N.W.2d at 364–66 (noting the attorney's neglect "did not cause any demonstrable financial *or other* harm" and considering lack of harm a mitigating factor (emphasis added)).

Additionally, the sheer number of clients affected by Kingery's conduct—more than a dozen—is an aggravating factor. *See Kieffer-Garrison*, 847 N.W.2d at 496 (concluding when an attorney neglected nine matters, the evidence showed "serial acts of misconduct, rather than an isolated misadventure"); *Conroy*, 845 N.W.2d at 67 (selecting a more severe sanction in part because the attorney neglected seven matters).

However, we also consider several mitigating circumstances in this case. For example, although Kingery ignored the Board's initial inquiries, she answered the formal complaint, testified at the hearing, and admitted the violations. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Humphrey*, 812 N.W.2d 659, 669 (Iowa 2012); *see also Hedgecoth*, 862 N.W.2d at 366. The Board credited Kingery's testimony, finding her genuinely remorseful. We do as well, and we consider her sincere acceptance of responsibility as a mitigating factor. *See Eslick*, 859 N.W.2d at 202 ("[R]emorse and cooperation generally mitigate our sanction."); *In re Glenn*, 256 Iowa 1233, 1242, 130 N.W.2d 672, 678 (1964) ("Repentance is ordinarily a commendable if not a necessary attribute for one who expects leniency.").

Additionally, until today, Kingery had an unblemished disciplinary record. *See Bartley*, 860 N.W.2d at 339 (considering lack of prior discipline a mitigating factor); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Bieber*, 824 N.W.2d 514, 527 (Iowa 2012) (same). She received a private reprimand in May 2014 for conduct unrelated to neglect, but "[p]rivate reprimands are not discipline." *Van Ginkel*, 809 N.W.2d at 110; *accord Said*, 869 N.W.2d at 194. When we have considered prior reprimands to be aggravating factors, they were either public reprimands, *see Eslick*, 859 N.W.2d at 202, or private reprimands for related conduct, *see Said*, 869 N.W.2d at 194.

However, the most significant mitigating factor is Kingery's alcoholism and her robust rehabilitative efforts to control or eliminate it. *See Nelson*, 838 N.W.2d at 542. Alcoholism does not justify or excuse ethical misconduct, but it can be a mitigating factor in determining the proper sanction. *See Clarity*, 838 N.W.2d at 660–61; *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Weaver*, 812 N.W.2d 4, 15 (Iowa 2012). "To be considered in mitigation, the alcoholism must have contributed to the ethical misconduct, and the lawyer must undertake rehabilitative efforts to control his [or her] addiction." *Clarity*, 838 N.W.2d at 661; *see Hauser*, 782 N.W.2d at 154 ("To the extent [the attorney] acknowledges his alcoholism and has taken steps to address it . . . , we consider these acts in fashioning an appropriate sanction.").

We conclude the facts of this case satisfy the framework set forth in *Clarity*. *See Clarity*, 838 N.W.2d at 661. Kingery's alcoholism contributed to her ethical misconduct, but she has since undertaken necessary and prudent rehabilitative efforts. Kingery's detoxification, outpatient treatment, and subsequent efforts to cultivate a support system and abstain from alcohol are important and commendable. *See*

*id.* ("Clarity has repeatedly undergone weeks of inpatient treatment and ongoing outpatient treatment to cope with his alcoholism . . . . We consider his efforts to be a mitigating factor."); *Nelson*, 838 N.W.2d at 542 (crediting an attorney's abstention from alcohol and his testimony that he would not drink again because he feared "losing everything"); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Axt*, 791 N.W.2d 98, 103 (Iowa 2010) (acknowledging the attorney's "rehabilitative efforts in actively attempting to control his addiction to alcohol"); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Ruth* (*Ruth I*), 636 N.W.2d 86, 89 (Iowa 2001) ("In mitigation of sanctions in this case, we consider that [the attorney] has made great strides in his battle with alcoholism."). We therefore consider Kingery's alcoholism and her rehabilitative efforts mitigating factors.[3]

**C.  Cases Involving Similar Conduct.**  Kingery's principal violation was her lack of diligence.  "Discipline for these types of violations 'generally ranges from a public reprimand to a six-month suspension.' "  *Hedgecoth*, 862 N.W.2d at 365 (quoting *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Hohenadel*, 634 N.W.2d 652, 655 (Iowa 2001)); *see also Conroy*, 845 N.W.2d at 66.  "A lengthy suspension may be appropriate if the neglect is one violation among many much more serious ones or occurs amidst aggravating circumstances."  *Hedgecoth*, 862 N.W.2d at 365.

---

[3]We note, however, that the timing of Kingery's neglect somewhat weakens the mitigating power of her addiction to alcohol.  Kingery testified the depths of the alcohol addiction began in October 2013 and continued until January 2014, and many instances of delays or missed appearances occurred in those months.  Yet several others occurred well before that.  For example, Geary was arrested and jailed in August 2013, months before Kingery testified alcohol started to consume her life and even before Kingery's September wedding.  Thus, we consider alcoholism a mitigating factor for some, but not all, of Kingery's violations.

Although the typical sanction for neglect ranges from a public reprimand to a six-month suspension, we have infrequently imposed sanctions at the lowest boundary of that range. We generally consider a public reprimand appropriate only when the case involves a single instance of misconduct. *See Van Ginkel*, 809 N.W.2d at 110; *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Dolezal*, 796 N.W.2d 910, 922 (Iowa 2011); *Hoglan*, 781 N.W.2d at 286. For example, in *Dolezal*, we noted a public reprimand was not appropriate because the attorney's behavior affected multiple clients and harmed one. *Dolezal*, 796 N.W.2d at 922. Accordingly, we imposed a suspension. *Id.* at 922–23. Similarly, in *Hoglan*, we acknowledged the lawyer's health problems in mitigation but suspended his license because he neglected four matters and his neglect harmed all four clients. *Hoglan*, 781 N.W.2d at 286–87.

After considering the circumstances of this case, including the mitigating factors discussed above, we agree with the Board that Kingery's conduct merits a suspension. *See Clarity*, 838 N.W.2d at 662 ("[The attorney]'s neglect resulted in the dismissal with prejudice of [an] appeal and the jailing of three . . . clients. We have imposed suspension of one to six months when the attorney's neglect caused harm to clients."); *see also Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Ruth* (*Ruth II*), 656 N.W.2d 93, 99 (Iowa 2002) ("Although we commend Ruth for [his] progress [in overcoming alcoholism], his efforts toward rehabilitation do not eliminate the need for a sanction . . . ."). We have imposed public reprimands for neglect when the misconduct has affected few clients and caused no client harm. *See, e.g., Iowa Supreme Ct. Att'y Disciplinary Bd. v. Tompkins*, 733 N.W.2d 661, 669–70 (Iowa 2007) (reprimanding an attorney who neglected two matters because "little prejudice was caused to either [client]"); *Iowa Supreme Ct. Bd. of Prof'l*

*Ethics & Conduct v. Mears*, 569 N.W.2d 132, 134–35 (Iowa 1997) (reprimanding an attorney who neglected two matters because the attorney's neglect "did not . . . result in ultimate harm to a client"); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Sather*, 534 N.W.2d 428, 431 (Iowa 1995) (reprimanding an attorney for neglecting one matter after considering mitigating circumstances, "including that no party ha[d] been prejudiced by [the attorney]'s conduct"). Kingery's neglect affected numerous clients and clearly caused harm to some. Accordingly, we conclude her conduct merits a suspension.

We now turn to the length of the required suspension. In *Van Ginkel*, we imposed a sixty-day suspension for neglect because while the attorney caused no client harm, he engaged in other serious misconduct including "[a] knowing misrepresentation to the court" and an "effort to shift the blame to an assistant." *Van Ginkel*, 809 N.W.2d at 110–11. Here, Kingery caused some client harm but did not commit other serious misconduct and has accepted full responsibility for her inaction. Therefore, we find *Van Ginkel* to be a useful comparator.

In two other neglect cases, we have imposed a suspension of three months when the neglect affected multiple clients' matters. For example, in *Hedgecoth*, the attorney's explanation for his neglect was not a mitigating factor, but his neglect was relatively limited in scope and caused no demonstrable harm to clients. *Hedgecoth*, 862 N.W.2d at 357, 366. Similarly, in a 1989 case, we imposed a three-month suspension when an attorney struggling with alcoholism "virtually abandoned his law practice" and utterly disregarded all communication "from the clerk, court and [ethics] committee," but soon sought detoxification and "devoted himself to rebuilding his life personally and professionally."

*Comm. on Prof'l Ethics & Conduct v. Haney*, 435 N.W.2d 742, 743–44 (Iowa 1989).

Although *Haney* and *Hedgecoth* contain several similarities to Kingery's case, we conclude a sixty-day suspension is appropriate here. Most significantly, we credit Kingery's treatment efforts, her genuine remorse, and the fact she did not commit more troubling companion violations along with her neglect. Additionally, we acknowledge Kingery voluntarily ceased practicing law—even after we lifted her temporary suspension—while she pursued treatment and rehabilitation. "The voluntary cessation of the practice of law is not considered a credit against any suspension subsequently imposed." *Ruth I*, 636 N.W.2d at 89; *accord Nelson*, 838 N.W.2d at 544. A period of voluntary cessation from practice does not justify a pro tanto credit against a suspension imposed because "[a]bsence[s] due to rehabilitation and disciplinary sanctions serve overlapping, but distinct, purposes." *In re Dean*, 855 N.W.2d 186, 193 (Iowa 2014). However, we can consider voluntary cessation when evaluating whether our sanction will serve its purposes of deterring future misconduct and protecting the public. *Cf. Hedgecoth*, 862 N.W.2d at 367 (accepting an attorney's voluntary commitment not to undertake appellate cases in lieu of an express practice limitation); *Dean*, 855 N.W.2d at 194 ("[A]bsence for the purpose of rehabilitation . . . may be considered a mitigating factor in determining the length and adequacy of a disciplinary suspension."). After considering all the circumstances of this case, we conclude a sixty-day suspension is appropriate for Kingery's violations.

**D. Conditions of Reinstatement.** The commission recommended several conditions on Kingery's reinstatement. Because the court lacks the infrastructure for supervising conditional

reinstatement regimes, we impose some but not all of the conditions on reinstatement recommended by the commission.

First, we conclude Kingery must, as a condition of any reinstatement, provide the Board with documentation showing her compliance with treatment providers' recommendations and her fitness to practice law. *See, e.g., Iowa Supreme Ct. Att'y Disciplinary Bd. v. Roush*, 827 N.W.2d 711, 720 (Iowa 2013) ("We . . . condition Roush's reinstatement—per the commission's recommendation—on his seeking, and complying with, mental health and substance abuse evaluations."); *Weaver*, 812 N.W.2d at 16 (requiring an attorney to provide medical documentation showing he had maintained sobriety); *Comm. on Prof'l Ethics & Conduct v. Jackson*, 429 N.W.2d 122, 123 (Iowa 1988) ("Any request for reinstatement shall be accompanied by proof that respondent has his alcoholism under control.").

At the hearing before the commission, Kingery stated she was "agreeable" to reimbursing Corson "to make things right." In disciplinary matters, "[w]illingness to reimburse a client . . . is a proper consideration" in deciding the appropriate sanction, including any conditions on reinstatement. *Comm. on Prof'l Ethics & Conduct v. Martin*, 375 N.W.2d 235, 238–39 (Iowa 1985). Accordingly, as a further condition of reinstatement, Kingery must reimburse Corson $347 and provide proof to the Board that she has done so. She must satisfy both conditions no later than fifteen days before any reinstatement. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Parrish*, 801 N.W.2d 580, 590 (Iowa 2011) (requiring a disciplined attorney to provide proof he had reimbursed clients prior to reinstatement); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Conroy*, 795 N.W.2d 502, 507 (Iowa 2011) (requiring a health care professional's evaluation no later than forty days after a

sixty-day suspension began); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Marks*, 759 N.W.2d 328, 333 (Iowa 2009) (requiring a health care professional's evaluation no later than fifteen days after a thirty-day suspension began).

Additionally, we urge Kingery to continue her relationship with the ILAP during the suspension and beyond in furtherance of her continuing rehabilitation. *Cf. Dean*, 855 N.W.2d at 194 (commending a disciplined judicial officer for her compliance with an ILAP monitoring agreement but not regarding it as a formal sanction).

## VII. Conclusion.

We suspend Kingery's license to practice law in this state indefinitely with no possibility of reinstatement for sixty days from the date this opinion is filed. The suspension applies to "all facets of the ordinary law practice." Iowa Ct. R. 35.13(3). Unless the Board files an objection, Kingery will be automatically reinstated after the suspension period on condition that she has paid all costs, *see id.* rs. 35.13(2), .27, and has met the other "reasonable conditions for reinstatement," *see id.* r. 35.13(1), imposed in this opinion. We tax the costs of this action to Kingery. *Id.* r. 35.27(1).

**LICENSE SUSPENDED.**